THE STATE v. CLIFFORD PENDERGRAFT, Appellant.—58 S. W. (2d) 290.

Division Two, March 3, 1933.

*G. W. Rogers* for appellant.

302

*Stratton Shartel,* Attorney-General, for respondent; *Jas. K. Coolidge* of counsel.

FITZSIMMONS, C.—This case comes to the writer upon reassignment. Appellant was charged by information in the Circuit Court of Ozark County with the felony of manufacturing hootch, moonshine, corn whiskey. The information also invokes against him the Habitual Criminal Act (Sec. 4461, R. S. 1929) for having served a sentence of two years in the State penitentiary upon a plea of guilty to the

same offense. The jury found him guilty of the offense charged, sustained the accusation of a prior conviction, and assessed his punishment at five years' imprisonment in the State penitentiary. The motion for a new trial having been overruled and sentence passed, an appeal was taken. Appellant assigns as error the overruling of his demurrers to the evidence and improper cross-examination of appellant. He also raises a constitutional objection to the admission in evidence of a certified copy of the record of his prior imprisonment in and discharge from the penitentiary.

The testimony on behalf of the State tended to prove: Sheriff Lyman Stevens had been informed that a still was being operated in the northern part of Ozark County. He and his deputies, Frank Mahan and Jim Pitchford, went in search of the still on August 27, 1930, and found it on the top of a hill described as a sharp point in a rough heavily-wooded section. About six feet from the still were three barrels filled with mash and covered with brush. They found no moonshine that time, and no person was there. The still was not in operation. It was not coupled up. But the boiler and all necessary appliances were on hand. The sheriff and his men lay in wait the night long, and when no one had appeared, they went off to breakfast. They returned to the neighborhood at noon, and, from a hillside, across a small ravine or hollow, they saw smoke rising from the still. From the same spot there came to them the low voices of men, the rattle, of things, and the noise of wood being split and dragged through the fallen leaves. The sheriff and his two deputies stayed observing and listening quite awhile, as they testified. Then they parted under a plan to close in upon the still from three points. Mahan and Pitchford approached from opposite sides and Pitchford reached the ridge at a point about forty steps from the still. Meanwhile, Mahan who had climbed the hill to within twelve feet of the mash barrels heard men run from a spot very close to the still. He called to them to halt but they ran the faster toward where Pitchford was supposed to be. At about the same moment Pitchford saw two men break out of the brush, running toward him from the direction of the still. One of these men, the appellant, he arrested, but the other man escaped by dropping over the point into a hollow.

Appellant was about ten steps from the still when first he came into Pitchford's view. Appellant, when arrested, complained of his hard luck, said that at least he would get his board and clothes and inquired whether a certain person had informed the officers. He refused to tell the name of his escaped companion. After the officers arrested appellant, they went to the still and found it in "full action" as the sheriff said. Fire was under the still, moonshine was running from it into a bucket, and there were several vessels filled with the liquor. One or two of the mash barrels which had been full when last the officers were there were empty. The officers also tes-

304

tified that but one man escaped, and that from the positions which they took about the hill on which the still stood, it was impossible for a third man to have slipped through their converging lines, unnoticed.

Appellant was prosecuted in this case under the name of Clifford Pendergraft. The State offered in evidence the record of the Circuit Court of Ozark County showing that Clifford Pender on May 19, 1925, pleaded guilty to the charge of manufacturing moonshine and was sentenced to serve two years in the State penitentiary. The State also offered in evidence a certified copy of the records of the penitentiary showing that Clifford Pender served that term. Walter Endicott, who was sheriff of Ozark County in 1925, identified appellant here as the person named in the records offered in evidence of appellant's prior conviction.

Appellant's wife, mother and sister testified that he was at home during the morning of the day on which he was arrested, and that he departed shortly after noon to seek work at a stave factory. Appellant testifying in his own behalf limited his direct examination to denials that he owned the still or had any interest in it or had manufactured whiskey with it. On cross-examination he testified that he was not at any time nearer than twenty steps to the still. He also testified that he left his home about noontime to seek work at a stave factory which was east of his place, but that he changed his mind and took a short cut toward a road leading to a country store, south of his home. The still was south by east. He was examined covering the distances of the stave factory, the still and the store from his home. The State in rebuttal showed that the still was only half a mile from appellant's house.

■ I. The trial court did not err in overruling appellant's demurrers. It is not the law that men must be seen doing actual work of operating a still in order that a conviction upon a charge of unlawful manufacture of moonshine may stand. In the instant case it cannot be said that the State merely proved the inactive, non-participating presence of appellant. The sheriff and his two deputies left the nonoperating still early in the morning after an all-night vigil. When they left, there was no fire under the still, no moonshine in vessels and no moonshine flowing into a bucket. The barrels were full of mash. When they returned about noon, they saw smoke rising from the still. They heard men's voices, and the sounds of wood chopping and wood dragging and the rattle of utensils. As they drew close to the still, two men fled from the officer who called upon them to halt. These men went bounding through the brush from the point where the still was. Appellant, one of the running men, was arrested by another officer on the opposite side of the hill. At once the officers went to the still and found it in full blast. It was reasonable for the

jury to infer that appellant and his companion had built and fed the fire under the still, had transferred the mash from the barrels into the distilling apparatus and had drawn off the moonshine as produced. The case made is much stronger than in State v. Milstead, 315 Mo. 1, 285 S. W. 429, and State v. Crabtree (Mo.), 12 S. W. (2d) 25, in which this court sustained the trial courts in overruling demurrers to the evidence upon charges of the unlawful manufacture of moonshine.

■ II. The assignment of error that the cross-examination of appellant was not confined to matters referred to in his examination in chief is not supported by objections made at the time. Substantially all of the cross-examination was without objection. Appellant's counsel objected to three minor questions upon the ground that they were outside the range of the direct examination. Two of the objections were sustained and the third was properly overruled.

■ III. Appellant's third assignment of error is that the trial court erred in admitting in evidence State's Exhibit A, a certified copy of the penitentiary records showing appellant's compliance with the sentence upon his prior conviction. The objection is that the admission of the exhibit violated appellant's right under Section 22, Article 2 of the Missouri Constitution to meet the witnesses against him face to face. The learned opinion of this court and the erudite dissenting opinion in the case of State v. McO'Blenis, 24 Mo. 402, construing a section of the Constitution in force in 1855, of the same tenor as Section 22, Article 2 of the Constitution of 1875, make it quite clear that the right of a defendant to meet the witnesses against him does not lay down a new rule of evidence. The court in the majority opinion in the McO'Blenis case, 24 Mo. l. c. 415, said of the constitutional provision under examination that by means of it the people incorporated in the frame of their government a great living principle of the common law under which they and their ancestors have lived. "And this principle, we think, is no other than the principle of the common law in reference to criminal evidence, that it consists in facts within the personal knowledge of the witness, to be testified to in open court in the presence of the accused." But the court made haste to say (24 Mo. l. c. 416): "It is not, however, a stiff, unbending rule, extending to every case, without exception, falling within its letter, but is limited and controlled by subordinate rules, which render it safe and useful in the administration of public justice, and are as well established as the great principle itself, which, with all its exceptions and limitations, was taken from the existing law of the land and incorporated into the Constitution." And by way of specification of these exceptions and subordinate rules the court said it was never supposed in England at any time that the

common-law right of an accused in a criminal prosecution to meet the witnesses against him face to face "was violated by the admission of a dying declaration, or of the deposition of a deceased witness, under proper circumstances; nor, indeed, by the reception of any other hearsay evidence established and recognized by law as an exception to the general rule."

The foregoing comments on the constitutional provision were made in a case in which there was read at the trial of the defendant a transcript of the testimony of a witness who testified at the preliminary hearing of defendant before a justice of the peace in the presence of the defendant by whom the witness was cross-examined. The witness died before the trial in the circuit court. The majority opinion of this court ruled against the contention of the defendant that the admission of the transcript of the testimony of the deceased witness was in breach of the defendant's right of confrontation with the witnesses and of cross-examination.

This court has ruled in cases involving the habitual criminal act that certified copies of records of the penitentiary are admissible in evidence as proof of the compliance of a defendant with the judgment of a former conviction. [State v. Austin, 113 Mo. 538, 21 S. W. 31; State v. Dalton (Mo.), 23 S. W. (2d) 1.] And under the reasoning of the McO'Blenis case, the admission of these records was not in breach of the rights guaranteed by Section 22, Article 2.

It may further be observed that the dissenting opinion in the McO'Blenis case contended (24 Mo. 1. c. 419): "that whenever there is a prosecution *and a witness* there the right of the prisoner to meet the witness face to face is given by the Constitution." But in the instant case there is not involved the presence of a witness to be subjected to cross-examination. The admission in evidence of the certified copy of a public record did not breach appellant's constitutional rights.

No objection is raised to the instructions. The information, verdict and judgment are valid in form and substance. No prejudicial error appearing, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. *Ellison, P. J.,* and *Tipton, J.,* concur; *Leedy, J.,* not sitting.