LLOYD EDWARD WAXLER,

*Plaintiff in Error,*

vs.

THE STATE OF·WYOMING,

*Defendant in Error.*

(No. 2456; November 21, 1950;.224 Pac. (2d) 514)

398

For the plaintiff in error the cause was submitted on the brief of Leonard H. Schlather, Clarence G. Cypreansen and Thomas A. Nicholas of Casper, Wyoming and oral argument by Mr. Schlather and Mr. Nicholas.

For defendant in error the cause was submitted on the brief of Norman B. Gray, Attorney General, Marion R. Smyser, Deputy Attorney General and Harry A. Thompson, Assistant Attorney General, all of Cheyenne, Wyoming and oral argument by Mr. Smyser and Allen H. Stewart, County and Prosecuting Attorney of Natrona County, Casper, Wyoming.

400

402

## OPINION

RINER, Chief Justice.

Lloyd Edward Waxler, plaintiff in error, was convicted by the verdict of a jury in the District Court of Natrona County of violating the provisions of Section 9-908 W. C. S. 1945. Judgment and sentence followed and he undertakes to bring the cause here for review by proceedings in error.

Plaintiff in error will usually be referred to hereinafter as the "defendant" and the defendant in error, the State of Wyoming will be ordinarily mentioned as the "State".

The jury on April 30, 1949 found the defendant guilty as charged in the information in the "first part or count" of said information and also that he had

previously been convicted five times of felonious penitentiary offenses committed in other states. Section 9-908 W. C. S. 1945 reads:

"Whoever, with intent to defraud by obtaining money, merchandise, property, credit, or thing of value, although no express representation is made in reference thereto, or who, in the payment of any obligation, shall make, draw, utter or deliver any check, draft or order for the payment of money in the sum of twenty-five dollars ($25.00) or upwards upon any bank, depository, person, firm or corporation, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in or credit with such bank, depository, person, firm or corporation, for the payment of such check, draft or order in full upon its presentation, shall be guilty of a felony and upon conviction thereof shall be fined not more than five thousand dollars ($5,000.00) or imprisoned in the penitentiary for not more than five (5) years, or both."

The information filed, in addition to charging defendant with transgressing the statute just quoted, charged also that he had been previously convicted five times of other crimes which required penitentiary sentences to be imposed on him as guilty of the several felonies pleaded. This part of the information was drawn pursuant to the provisions of Sections 9-109 to 9-111 inclusive W. C. S. 1945. These sections are as follows:

"9-109—Every person convicted in this State of a felony who shall previously have been twice convicted of a felony, whether in this State or elsewhere, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in the State Penitentiary for a period of not less than ten (10) years nor more than fifty (50) years."

"9-110—Every person convicted in this State of a felony who shall previously have been three times convicted of a felony, whether in this State or elsewhere, shall be punished by imprisonment in the State Penitentiary for not less than life; provided, however, that

nothing in this Act (Sections 9-109—9-111) shall abrogate or effect the punishment of death in any and all crimes for which the punishment of death is now, or hereafter, may be inflicted."

"9-111—Provisions of this Act (Sections 9-109—9-111) shall apply only when previous convictions are set forth in the information or indictment charging the defendant, and proof thereof shall be made."

So far as the offense is concerned for which defendant was put upon his trial in this jurisdiction the information herein alleged that:

"Lloyd Edward Waxler late of the County aforesaid, on or about the 2nd day of December A.D. 1948 in the County of Natrona in the State of Wyoming, did then and there willfully and unlawfully and fraudulently in the payment of an obligation and with intent to defraud by obtaining money, merchandise, property, credit and other money drawn upon the Wyoming National Bank of Casper, Wyoming, which said check is in words and figures as follows:

WYOMING NATIONAL BANK
$$\frac{99\text{-}109}{1063}$$
Casper, Wyoming, 12-2-1948 No. _____

Pay to the
  Order of _____ Jac. Idlman _____ $40.00 ____
Fourty and - - - - - - - - - - - no/100 Dollars
For _____ L. E. WAXLER _____

"The said L. E. Waxler well knowing at the time of making, drawing and delivering the said check, that he, the said L. E. Waxler, had no account or credit with said bank for the payment of said check in full upon presentation, thereby intending to defraud;"

Relative to the five charges of felonies of which the defendant was convicted in other states, the first one was pleaded omitting formal introductory part thereof thus:

"that Lloyd Elmer Waxler, on or about May 9, 1940 was convicted in the District Court of the Thirteenth Judicial District of the State of Oklahoma, sitting in and for Oklahoma County, of a felony, to wit: The crime of Forgery in the Second Degree, and that as a result of, and based on such conviction, said defendant was sentenced by said District Court of the Thirteenth Judicial District of the State of Oklahoma, to the State Penitentiary at McAlester, in the State of Oklahoma, which was then and there a penal institution, for a term of six (6) months and that in pursuance of said judgment, said Lloyd Elmer Waxler was imprisoned in said Oklahoma State Penitentiary at McAlester in accordance with said sentence;"

The remaining portions of the information which alleged defendant's conviction of four other felonies were similar in substance, being varied only to correspond with the facts the pleader desired to set forth and prove. The second felony conviction was alleged to have occurred on or about May 9, 1940 in the State of Oklahoma also for the crime of forgery in the second degree; the conviction of the third felony being alleged to have occurred on December 13, 1940 in the State of Oklahoma, likewise for the crime of forgery in the second degree; the fourth one being alleged to have occurred on or about November 24, 1944 for the crime of passing as true a forged instrument in the State of Texas; the fifth and last conviction being stated to have taken place on or about January 25, 1945 for the crime of "swindling over fifty dollars by insufficient check" also in the State of Texas.

The information concludes after the charges as above have been set out in the formal words "contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming."

The information was signed and verified by the deputy and prosecuting attorney of Natrona County,

Wyoming. It also has the notation thereon under the hand and seal of the Clerk of the District Court of said county that:

"Defendant, appearing in person and by his attorney, Leonard Schlather, waived the reading of the information, and entered a plea of 'not guilty' as charged."

Upon the conclusion of the trial with the result indicated above the defendant was on May 7, 1949 sentenced to the state penitentiary at Rawlins, Wyoming for the "balance" of his natural life. Previously and before sentence defendant filed on May 2, 1949 his motion in arrest of judgment which was on May 6, 1949 overruled by the court. Motion for a new trial on behalf of the defendant was thereafter filed on May 7, 1949 and an order made on the same day overruling this motion.

Under an order of extended time the defendant filed on August 20, 1949 his proposed bill of exceptions which was settled and allowed by the court the same day. Before proceeding further with our discussion of the contentions urged in criticism of the information in this case it is proper to recall that our Rule 13 (Section 1-413 W. C. S. 1945) provides that:

"Nothing which could have been properly assigned as a ground for a new trial in the court below will be considered in this court in an appellate proceeding brought by the filing of a petition in error and known as a proceeding in error, unless it shall appear that the same was properly presented to the court below by a motion for a new trial, and that such motion was overruled and exception was at the time reserved to such ruling; all of which shall be embraced in the bill of exceptions. The ruling of the court below upon each matter presented by a motion for a new trial shall be sufficiently questioned in this court by an assignment that the court below erred in overruling such motion for a new trial."

It has been held by this court under the rule just quoted that "errors assigned in a motion for a new trial will not be reviewed unless the motion be incorporated in a bill of exceptions". White vs. State, 23 Wyoming 130, 147 Pac. 171. In the case last mentioned this court said:

"Errors assigned in a motion for a new trial will not be reviewed, unless the motion be incorporated in a Bill of Exceptions."

This court has also indicated that "alleged error in overruling a new trial motion can be reviewed only when the motion is included in the Bill of Exceptions". Morgan vs. State, 26 Wyoming, 212, 181 Pac. 598. In Patrick vs. State, 17 Wyoming 260, 264, 98 Pac. 588 this court said:

"In the absence of a bill of exceptions it is clear that this record presents but two questions, viz; the sufficiency of the information to state an offense; and the jurisdiction of the district court of the subject matter of the action."

In line with what was intimated in the Patrick case supra are: Stonefield vs. Commonwealth, 282 Ky. 692, 139 S. W. 2d 752; State vs. Sylvia, 195 Wash. 16, 79 Pac. 2d 639. Numerous other citations to the same effect could readily be supplied.

Upon examination of the record in the case at bar we find it to be in the same condition as presented to this court in the White case supra. That is to say, that the motion for new trial together with a statement that the motion was overruled and exception saved does not appear in the bill of exceptions which was tendered to the trial judge. We accordingly are obliged to turn our attention to the sufficiency of the information.

It is contended on behalf of defendant that the information fails to show that he made, drew, uttered, or

delivered any check in violation of Section 9-908 supra. But the check involved in the transaction is set out in full in the information. It shows upon its face that the defendant drew the check; that it was for more than $25.00, viz. $40.00; that it was drawn upon the "Wyoming National Bank" and drawn to the order of Jac. Idleman. The information then states that at the time defendant made, drew and delivered the check he knew he had no account or credit with said bank for the payment of the check in full upon presentation, thereby intending to defraud. It is manfest that he intended to defraud payee of the check. Doubtless if we were permitted to examine the evidence in the case—which we are not under the previous rulings of this court cited above—it would show that the check was presented to the bank duly endorsed by the payee and returned because of "insufficient funds". In other words the proofs would very likely have made clear any indefiniteness in the information. Besides, as argued on behalf of the state, this defect, assuming there was one, could have been reached by motion to quash. No such motion was interposed. Defendant pleaded "not guilty" and went to trial and thereby waived the point. Section 10-813 W. C. S. 1945. That the pleading could and should have been drawn with more precision it may be conceded, but we think defendant knew very well from the information as filed the offense for which he was being tried.

It is urged that the information does not state that the crime charged against defendant was "feloniously" done. But 42 C. J. S. 1028, Section 135 says "by weight of authority" that:

"If a crime is made a felony by statute, and the indictment or information charges an act which of itself constitutes a felony under the statute, it is not necessary to charge that the act was done feloniously, unless the statute makes a felonious intent an element of the offense; . . .

"Under this rule, it is sufficient to follow the language of the statute without using the word 'feloniously,' and if the word is used, it may be rejected as surplusage, and does not vitiate the indictment."

The same text points out that:

"It also has been held that the term 'felony,' having lost its ancient English signification and acquired the meaning of a crime punishable by death or imprisonment in a state prison, the reason for the rule requiring the use of the word 'feloniously' has ceased, and with it the necessity of such employment."

In the instant case the statute (Section 9-908 supra) itself declares that the described act or acts are felonies and imposes a penitentiary imprisonment as a possible consequence. Section 9-102 W. C. S. 1945 also defines felonies and misdemeanors as follows:

"Offenses which may be punished by death or by imprisonment in the penitentiary, are felonies; all other offenses are misdemeanors."

There is no attempt in the statute here involved to include the word felonious as one of the "elements of the description of the offense". So we find 27 Am. Jur., Section 98, p. 658 stating as does C. J. S. supra that:

"As stated above, it is not necessary, in charging a statutory offense, to allege criminal intent, or criminal knowledge or scienter, where the statute does not make them essential ingredients of the offense denounced; nor is it necessary to use 'unlawfully', 'feloniously', or like, technical words which are commonly regarded as indispensable at common law, where the statute does not include such words as elements of the description of the offense."

The rule is given in Mullins vs. Commonwealth, 285 Ky. 282, 147 S. W. 2d 704 thus:

"Hence, in charging a statutory offense it is not necessary to allege criminal intent or criminal knowledge where the statute does not make them essential ingredi-

ents; nor is it necessary to use 'feloniously' or like technical words which are commonly regarded as indispensable at common law where the statute does not include such words or elements in the description of the offense."

There is no merit in defendant's contention.

The claim is made for defendant further that the paragraphs which described the several crimes alleged to have been committed in other states should have been deleted from the information and nothing said about them until the defendant had been convicted in this state of the crime charged in the information but there are several answers to the contrary of this contention that must be made.

In the first place, the statute (W. C. S. 1945, Section 9-111) declares, as pointed out above, that the habitual criminal act can only be invoked:

"when previous convictions are set forth in the information or indictment charging the defendant, and proof thereof shall be made."

42 C. J. S. 1057, Section 145 says that:

"Where, in case of repeated convictions for similar offenses, the statute imposes an additional penalty, it is generally held that an indictment for a subsequent offense should allege facts showing that the offense charged is a second or subsequent crime within the contemplation of the statute, although failure to do so will not necessarily foreclose the right to sentence accused as a second offender, and also that it is necessary to allege both the present offense and the previous convictions."

and also that:

"The fact that an averment of his previous conviction may prejudice accused in his current trial cannot override the necessity of making such allegation on the question of a more severe penalty for a subsequent offense, and such an averment is usually regarded as

authorized, and not to violate the constitutional or statutory rights of accused."
further that:

"Habitual criminality is a status rather than an offense, and allegations of previous convictions made in indictments or informations brought under an habitual criminal statute do not constitute a distinct charge of crime, but go only to the punishment of the criminal."

In O'Neil vs. State, 76 Cr. App. Okla. 107, 134 Pac. 2d 1033 appears an excellent discussion of the matter taken from other sources as follows:

"On page 64 of 58 A. L. R. this rule is announced by the annotator: 'It has been generally held that, in order to subject an accused to the enhanced punishment for a second or subsequent offense, or as an habitual criminal, it is necessary to allege in the indictment the fact of a prior conviction or convictions.'

"And on page 66, of 58 A. L. R., it is said: 'The reason or basis for this rule is well stated in Long v. State (Tex.) supra (36 Tex. 6), wherein the court held it necessary to allege in the indictment the fact of the former conviction or convictions, for whatever affects the degree of punishment must be alleged. In discussing the necessity of this allegation in the indictment for the prior offense, the court said: "The prisoner is not tried over again for his first offense but he has a right to know that the question of his having committed a first offense is to be presented to the jury, and, if it be shown that he did commit a former offense, that this punishment will be increased thereby, so that he may rebut this fact in any manner the law points out to him. The question of identity certainly may be raised, and he has a right to show that he is not the person named in the former record. He might also show that the court had no jurisdiction to try the case, or that the judgment of conviction had been set aside, a new trial granted him, and that he had been acquitted. How is he to make any of these defenses unless notified by the indictment of the intention of the state to hold him as guilty of a second or third offense? Lord Campbell, Ch. J., in an English case, observed: 'A Statement of a

previous conviction does not charge an offense. It is only the averment of a fact which may affect the punishment. The jury do not find the person guilty of the previous offense; they only find that he was previously convicted of it, as a historical fact'. Reg. v. Clark (1853) Dears, C. C. 198, 201, 169 Eng. Reprint, 694. Apply this principle to the case at bar. The indictment contains no reference to a former conviction. The prisoner is not put upon his guard, nor enabled to make any defense against this charge of a former conviction; that is thrown in as a make weight on the trial, and when the state had closed its other evidence, and he is forced to submit without the power of resistance. My understanding of the statute is simply this, that the legislature intended that this fact, like any other material fact shown against the prisoner, should be shown in strict accordance with the rules and principles of law; and I believe there is no other way in which this can be done, than by giving the defendant timely notice in the indictment that the fact will be shown against him on the trial." ' "

And this court in Bandy vs. Hehn, Warden, 10 Wyo. 167, 67 Pac. 979 has said:

"But we think that, in reason and by the great weight of authority, as the fact of a former conviction enters into the offense to the extent of aggravating it and increasing the punishment, it must be alleged in the information and proved like any other material fact, if it is sought to impose the greater penalty. The statute makes the prior conviction a part of the description and character of the offense intended to be punished. (Tuttle v. Com., 2 Gray (Mass.), 505; Clark's Crim. Proc., 204)."

It is asserted by defendant that it appears in the information that the defendant was convicted of two similar offenses in another state on the same day and that this fact indicates that the information is in that particular defective. However, in 24 C. J. S. 1152-3, Section 1960 it is said:

"Under the statutes in some jurisdictions, it is not necessary for the previous conviction to precede the com-

mission of the offense for which accused is being tried in order to authorize the increased penalty, and that accused was previously convicted on the same day of two former separate offenses was held not to prevent his conviction as a third offender."

The Court of Appeals of Ohio in Bumbaugh vs. State, 36 Ohio App. 375, 173 N. E. 267 has stated that:

"We believe that it is well settled by the law of this state, as well as other states, that, where two offenses have been finally and completely adjudicated, and, after such adjudication, another violation of the same statute is committed, this violation plainly comes within the meaning of a third offense."

Besides in this connection it may be observed that the defendant was charged with the commission of five felonies without this state. Only three are necessary to allege and prove (Section 9-110, W. C. S. 1945 supra) in order to impose a sentence for life imprisonment.

It is insisted that after each paragraph describing the felony alleged to have been committed in another state than Wyoming, the information is defective in not inserting the words "against the peace and dignity of the State of Wyoming" as required by Section 15 of Article V of the Wyoming Constitution. This criticism is also without foundation. The information in this case does conclude as we have seen with the words last above quoted and the prosecution mentioned in the Wyoming Constitution is for a violation so far as the case at bar is concerned of Section 9-908 W. C. S. 1945 supra and not for any other of the five other offenses described in the information as committed in other jurisdictions.

In 25 Am. Jur., Section 26, p. 273 the text says: "The allegation of a prior conviction need not conclude 'against the peace and dignity' of the state."

The State of Kentucky has the same constitutional provision as our Section 15, Article V supra. In Boggs

vs. Commonwealth 9 Ky. 342, 5 S. W. 307 the court in affirming a judgment of conviction a third time of a felony and life sentence thereon was imposed by the court this was said:

"It is true the constitution provides that all prosecutions shall be carried on in the name and by authority of the commonwealth of Kentucky, which was done in this case, and conclude, 'against the peace and dignity of the same.' That provision was literally complied with in this case, for the indictment does conclude with the words quoted. It was not necessary the words should be appended to each specification of former conviction for felony, nor in fact could they have with propriety been so added. For all the previous convictions mentioned had taken place in other states, beyond the jurisdiction of this commonwealth.

"We do not perceive wherein the substantial rights of the accused have in the slightest particular been prejudiced."

Complaint is made that some of the instructions given by the court to the jury were erroneous. But the record proper which alone we are permitted to examine, of course, does not show the instructions. They must appear in an appropriate bill of exceptions which we do not have in this case.

Says 17 C. J. 127, 128, Section 3418:

"In the absence of statute or rule of court, instructions given or refused are not part of the record unless made so by a bill of exceptions."

Referring to the case of Van Horn vs. State, 5 Wyo. 501, 40 Pac. 964 this court remarked in the civil case of Stoner vs. Mau, 11 Wyo. 366, 394, 72 Pac. 193:

"It is, therefore, urged that the instructions are not entitled to the consideration of this court. But all the instructions are returned with the original papers, and each instruction is numbered, noted as given and signed by the judge. This raises a question that we believe has

not been directly decided by this court as to civil cases; although there may be found in some of the opinions expressions indicating that all instructions given or refused must be preserved by bill of exceptions to become part of the record. We have so held in criminal cases. (Van Horn v. State, 5 Wyo. 501.) But the statutory provisions in the matter of instructions in respect to civil and criminal cases differ in an important particular."

Additionally it may be noted that no objections seemed to have been presented to the trial court relative to any of the instructions given or refused. They seem to be undertaken to be argued as erroneous for the first time in this court.

It is contended further on behalf of the defendant that by the introduction in evidence of duly certified copies of prison records, of judgments of conviction of previously committed felonies as alleged, and finger print records of defendant duly certified though taken in other states, he was deprived of the constitutional guaranty of confronting the witnesses against him (Const. Art. I Section 10). We do not think so.

In 23 C. J. S. 370 Section 1000 it is said:

"In a proceeding for the punishment of habitual offenders or of persons guilty of successive offenses, accused is not denied the benefit of the constitutional guaranty by the admission of duly certified copies of prison records showing his compliance with a sentence on a prior conviction, by the admission of duly certified copies of judgments of conviction and sentence against him in courts of other states, or by the admission and use of copies of finger print records certified by wardens of prisons of other states."

The point has been discussed adequately by the Supreme Court of Washington in State vs. Johnson, 194 Wash. 438, 78 Pac. 2d 561 where this language was employed:

"It is further contended by appellant that he did not have the opportunity to confront the witnesses testifying against him, as is guaranteed to him by the State Constitution.

"Documentary evidence is admissible, and its admission is not in derogation of the defendant's right to meet his accusing witnesses face to face for the simple reason that a document is not a witness. 8 R. C. L. 88; People v. Reese, 258 N. Y. 89, 179 N. E. 305, 79 A. L. R. 1329. "The law in this state on this point is settled. State v. Bolen, supra. The court allowed in evidence fingerprints from the War Department to establish the identity of a dead man who could not otherwise be identified. In that case we said: 'But appellant further contends that the admission of these exhibits violated section 22 of article 1 of our Constitution, which provides that in all criminal cases the accused shall have the right to meet the witnesses against him face to face. Similar provisions are in the Constitutions of many of the states, and it has often been held that they have no application to proof of facts in their nature documentary, and which can be proved only by the original or authenticated copy. This question has been so thoroughly discussed and reviewed by eminent authorities that we do not feel justified in again undertaking to cover the field. The following leading cases show conclusively that the admission in evidence of the exhibits in question did not violate any of the appellant's constitutional rights. United States v. Swan, 7 N. M. 306, 34 P. 533; State v. Dowdy, 145 N. C. 432, 58 S. E. 1002; Commonwealth v. Slavski, 245 Mass. 405, 140 N. E. 465, 29 A. L. R. 281 (supra); People v. Love, 410 Ill. 558, 142 N. E. 204; State v. Torello, (103 Conn. 511, 131 A. 429)."

See also People vs. Coyle, 88 Cal. App. 2d 967, 200 Pac. 2d 546.

In People vs. Purcell, 22 Cal. App. 126, 70 Pac. 2d 706, 709, the court said:

"Furthermore, with reference to documentary evidence, in 8 Ruling Case Law, at page 88, it is stated that 'what is called documentary evidence—that is, facts proved by

a document or a duly authenticated copy thereof—is not objectionable as violative of this constitutional right. Documents are not witnesses. (Citing authorities.) At the trial of a charge of bigamy, for instance, proof of the official record of the marriage which is the foundation of the charge does not infringe the defendant's constitutional right'—citing note to 129 Am. St. Rep. 236 (36). To the same effect see Dowdell v. United States, 221 U. S. 325, 31 S. Ct. 590, 55 L. Ed. 753.

"It also has been held in Commonwealth v. Slavski, 245 Mass. 405, 140 N. E. 465, 468, 29 A. L. R. 281, that 'one of the acknowledged exceptions to the face to face rule of evidence is that public records are competent evidence when of probative value respecting an issuable fact. That is an ancient principle of the common law, recognized at the time of the adoption of the Constitution."

"The exact point was decided against the contention of appellant in the case of People v. Russell, 131 Cal. App. 646, 21 P. (2d) 959, wherein the court said: 'No objection is made to the sufficiency of the evidence to support the charges of violations of the section of the Penal Code, but it is claimed that section 969b of that Code, making certain records evidence of a prior conviction, violates the due process clauses of the state and Federal Constitutions (Const. Cal. art. 1, Section 13; Const. U. S. Amend. 14). As shown by the following, there is no merit in this contention. (Citing many authorities.)' "

See State vs. Pendergraft, 332 Mo. 301, 58 S. W. 2d 290, 292.

It can be observed with propriety also that this question is an appropriate one to be raised by a proper bill of exceptions which, as we have seen, we do not have in this case available for our examination.

Finally our attention is directed by counsel for defendant to the case of People vs. Olah, 300 N. Y. 96, 89 N. E. 2d 329 which reversed a conviction and sentence

as a second felony offender on the ground that conviction under a New Jersey statute which made theft of $20.00 or more a felony was not conviction of a crime which if committed in New York State would have been a felony notwithstanding that the New Jersey indictment charged a theft of more than $200.00 and the defendant pleaded guilty thereto. Three judges dissented. The law there involved was radically different from Sections 9-109, 9-110, W. C. S. 1945 quoted above. It read:

"*And be it further enacted,* That a former conviction in any of the United States, for any offense punishable by the laws of this state, by imprisonment in the state prisons, shall be considered as a former conviction within the meaning of this act, and of all former acts imposing an increase of punishment for the commission of a second offense."

The variance between the New York statute and our statutory law on the subject is quite plain. It follows that the New York case cited can not be regarded as in point here.

Without extending this opinion at further length, though much more could be written, we reach the conclusion that the judgment and sentence drawn in question in the case at bar should be affirmed.

*Affirmed.*

KIMBALL, J., and BLUME, J., concur.

BLUME, Justice.

While I do not find any reversible error in the judgment in this case from a strictly legal standpoint, I ought, I think, make a short comment.

The defendant herein is confined in the penitentiary for life for not making good a check for forty dollars

($40.00), plus the fact that he had on several occasions been convicted of a similar offense in other states, the detailed facts involved in the former convictions not being shown in the record before us. To confine a man in the penitentiary for life is so serious that such punishment should be inflicted only in a limited number of cases. The court in this case had no discretion in the matter. To fail to make good, say four checks for comparatively small amounts, involves in many or most cases an additional element—namely that of fraud—to that involved in the non-payment of four different notes. And yet, it may well be questioned whether the situations ordinarily justify the drastic difference that in the former case punishment by confinement in the penitentiary for life should be inflicted, while in the latter case, there is complete freedom from criminal punishment.

Moreover, under our statute the former convictions are introduced in evidence at the same time that a defendant is tried for the later offense. The fairness of that procedure may well be questioned. We said in Perue vs. State, 43 Wyo. 322, 328, 2 P. 2d 1072 that: "There can be no question of doubt, nor is it of trivial moment, that an accused is prejudiced in the minds of a jury, when evidence appears against him which would indicate habitual criminalty." That is just as true today as it was when the case cited was decided. Looking over the evidence in this case, the defendant might not have been convicted herein if the former convictions had not been shown in connection with the trial as to the check of forty dollars ($40.00). It seems to be doubtful that some of the transactions for which the defendant was formerly convicted in another state would be a felony in this state, and it is questionable that they nevertheless should be considered a felony under our statute relating to habitual criminals merely because such other state has defined them as such.

These matters are not argued herein, and so are not decided. I think the case is one highly proper to be considered by the Board of Pardons, which can if it is deemed necessary or advisable, investigate the detailed facts involved in the former convictions.