**STATE of Missouri, Respondent,**

v.

**William Fred SCOTT, Appellant.**

No. 45449.

Supreme Court of Missouri,

Division No. 1.

Feb. 11, 1957.

Robert J. O'Hanlon, for appellant.

John M. Dalton, Atty. Gen., Richard W. Dahms, Asst. Atty. Gen., for respondent.

WESTHUES, Judge.

On January 20, 1956, in the Circuit Court of the City of St. Louis, Missouri, a jury found defendant Scott guilty of robbery in the first degree by means of dangerous and deadly weapon and assessed his punishment at five years' imprisonment in the State Penitentiary. From the sentence imposed, defendant appealed.

Defendant was represented by counsel at the trial but he has not briefed his case in this court. In his motion for a new trial, he preserved the following points for our review: Defendant claimed the evidence was insufficient to sustain the verdict of the jury; assigned error in the court's not declaring a mistrial because of a statement made by a police officer in answer to a question asked on cross-examination; assigned error in the court's admitting evidence of statements made by the defendant, claiming they were made under duress; assigned error in the court's refusing an instruction to the effect that if defendant made statements after he had been in custody for more than twenty hours, the statements were involuntarily made; and assigned error in the court's not declaring a mistrial because of improper argument of the prosecutor.

The offense was alleged to have been committed in the City of St. Louis, Missouri, on October 30, 1954. The evidence, in substance, disclosed the following to have occurred: On October 30, 1954, at about 8:45 p. m., James Rufus Tatum and Joseph Stanford entered a Kroger Store at 3732 South Grand Avenue and, after loitering about the place for a few minutes, walked past a check-out counter where a Mr. Gosik was on duty. As these two men passed by Gosik, Tatum displayed a gun and Stanford said, "We take it all." Gosik removed the paper money from the cash register and handed it to Stanford who put it into a paper bag and the men departed. Thereafter, an examination of the cash register disclosed that about $132 was missing. Also in the store at this time were Mr. Schneider, the manager, and Miss Fash, another clerk, who saw Tatum and Stanford in the store but did not witness the holdup. The police were notified

and given a description of Tatum and Stanford.

On November 12, 1954, defendant William Fred Scott entered his car in Breckenridge Hills, Missouri. He drove east on Easton Avenue and was followed by a police car. Scott turned from Easton onto Vandeventer and stopped at the curb. Tatum, who was on the sidewalk, entered the car and the two drove on. The police followed and later stopped the Scott car and both Tatum and Scott were taken to police headquarters. Scott was questioned at intervals and on the following day, indicated that he had had a part in the robbery of the Kroger Store. The police called Schneider and Gosik who arrived at the police station about ten o'clock on the night of November 13. The State introduced evidence to the effect that the defendant, in the presence of these two employees of the Kroger Store and also in the presence of police officers and Tatum and Stanford, stated that he had taken Tatum and Stanford in his car to the location of the Kroger Store which they had agreed to rob; that he (Scott) had furnished the gun used in the commission of the crime; that after the robbery, Tatum and Stanford joined him in his car and he was given a portion of the money obtained from the store. On Monday, November 15, the police learned from Scott that he had borrowed a gun from one Maeckling but had returned it. The police went to the residence of Mr. Maeckling and obtained an automatic pistol.

At the trial, Maeckling testified that Scott did borrow the pistol from him and later returned it. Scott testified he had borrowed the pistol because there had been some prowlers in his neighborhood. Maeckling corroborated Scott as to this evidence. Defendant denied he had had any part in the robbery; denied that he, in the presence of the Kroger clerks, made any admission of his guilt; that the only time he admitted taking part in the crime was on Sunday, November 14, when his wife was at the police station and the officers threatened to place Scott's wife in jail with prostitutes if he did not admit his guilt; that after a conference with his wife, he (Scott), to save his wife from the humiliation, admitted taking part in the robbery. Note his evidence on this question:

"Q. Was anything said that in her presence concerning her? A. They told me that if I didn't own up to this robbery, or admit participating in this robbery, that they would throw my wife in a cell with a bunch of prostitutes, that is what one of the detectives said.

"Q. After that statement was made, what happened? A. After that statement was made, my wife and I got to talk to each other for about approximately fifteen minutes in a little side room off of Mr. Chapman's office, the door leads directly into Mr. Chapman's office, and we stayed there and talked about fifteen minutes, and we had agreed that I would tell them, or agree to anything that they wanted me to, just so my wife could get out of that police station and go home; she was very upset.

"Q. After this discussion with your wife in the side room, where did you go? A. The detective knocked on the door shortly after we were ready, and we went out, and I told the detective as I went through the door that I would go along with them if they would release my wife right away."

Police officers testified that no one threatened to arrest defendant's wife or to place her in jail; that the wife voluntarily appeared at police headquarters on Sunday, the day after Scott had admitted his guilt. Defendant testified that he "met Mr. Tatum playing baseball in the penitentiary"; that he had not seen Tatum after leaving the penitentiary until he accidently saw him on Vandeventer Avenue shortly before the arrest; that his only

purpose in stopping was to talk to Tatum about the days they spent in prison.

■ Considering the first point preserved for review, we are of the opinion that the above-stated evidence was ample to support the verdict of guilty.

With reference to the point made that the trial court should have declared a mistrial because a police officer gave an answer to a question on cross-examination which indicated that defendant had been under investigation for other offenses, we find in the record that the police officer Saitz was being questioned about the time and day Scott admitted his guilt and the time and day he denied his guilt. Note a portion of this cross-examination:

"Q. Now, how long did the questioning take place on November 13, 1954, the seven p. m. questioning? A. Well, if I recall, he made a confession shortly after seven o'clock p. m. in reference to this particular offense.

"Q. And from the time you started questioning him about that, about how much time elapsed before he confessed? A. If I recall, Sergeant Dorn began questioning the defendant shortly after seven and at that particular time he commenced to acknowledge this participation in the holdup.

"Q. Now, prior to that, he denied, did he not, prior to that time he denied it in your presence, did he not? A. You mean that particular day?

"Q. Well, on the Friday preceding, he was questioned Friday night, was he not? A. Yes. That was not in reference to this specific hold-up, though."

■ It is evident that the cross-examiner was pressing the officer for an admission that the defendant had denied his guilt on Friday night and that defendant had been questioned about the robbery on that night. The answer was responsive to the questions

asked and the trial court was justified in refusing to declare a mistrial. State v. Nolan, Mo., 171 S.W.2d 653, loc. cit. 655(5), (6, 7).

■ Defendant in his motion for new trial claimed error because evidence of police officers was admitted as to oral admissions made by the defendant because, as defendant contended, the admissions were the product of duress, coercion, and intimidation. We find no error because defendant claimed that the only reason he admitted guilt was because his wife had been threatened with arrest and would have been placed in jail with prostitutes. The police officer denied all this and so the matter was a question for a jury. An instruction was given telling the jury to disregard the admissions if they found they were involuntarily made. State v. Bellew, Mo., 282 S.W.2d 536, loc. cit. 537(2, 3).

■ Defendant assigned error to the refusal of the trial court to give an instruction telling the jury that if the defendant made any admissions after he had been in custody for more than twenty hours, the admissions were involuntarily made. There is no merit in this assignment. Defendant said the only reason he made the admissions was because his wife had been threatened. Furthermore the fact that admissions had been made after a defendant had been held more than twenty hours without a charge having been filed does not, standing alone, render the admissions as having been made involuntarily. See State v. Lee, Mo., 233 S.W.2d 666, loc. cit. 668(1, 2).

In another assignment in the motion for new trial, defendant said that a mistrial should have been declared because during the closing argument, the State argued the evidence of prior convictions as evidence of guilt. As we read the argument, the prosecutor told the jury that if defendant was found guilty and if the jury found that he had previously been convicted, the jury was to assess the punishment at life impris-

onment; but if defendant was found guilty and the jury further found that he had not been previously convicted, then the jury was at liberty to assess punishment for any period of imprisonment not less than five years.

It seems to us that the argument was helpful to the defendant. The State proved that Scott had served two terms in the penitentiary on two previous convictions. The defendant, while testifying at the trial, admitted the convictions and that he had been discharged after serving the sentences. However, in the face of that evidence and the admissions, the jury by its verdict made the specific finding that "We further find the defendant not guilty of a prior conviction or convictions of a felony as charged in the indictment." The argument certainly did not harm the defendant.

We have examined the record and find no error prejudicial to the defendant.

The judgment is affirmed.

All concur.