STATE of Missouri, Respondent,

v.

William Fred SCOTT, Appellant.

No. 45448.

Supreme Court of Missouri,

Division No. 1.

March 11, 1957.

Shaw & Smith, for appellant.

John M. Dalton, Atty. Gen., Fred L. Howard, Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant was charged, tried and convicted in the Circuit Court of the City of St. Louis, Missouri, of the offense of robbery in the first degree by means of a dangerous and deadly weapon and he was sentenced to five years imprisonment in the state penitentiary. Sections 560.120 and 560.135 RSMo 1949, V.A.M.S. He has appealed from the judgment and sentence, but has not favored us with a brief, although he was represented by counsel in the trial. We shall examine the assignments of error in his motion for a new trial and review such as are sufficiently specific to preserve any matters for review under 42 V.A.M.S.Supreme Court Rule 27.20.

The amended information under which defendant was tried and convicted alleged that the offense was committed in the City of St. Louis, Missouri, on October 28, 1954. Defendant was charged as a principal, but the state's theory, as shown by its evidence, was that defendant and two others entered into a conspiracy to stage the robbery in question; that the defendant was present, aiding and abetting the commission of the crime; and that he furnished the gun and the "get-away" automobile and shared in the proceeds of the robbery. Section 556.170 RSMo 1949, V.A.M.S.

The evidence on behalf of the state tended to show that the Kroger Grocery and Baking Company owned and operated a store at 131 North Euclid Avenue in the City of St. Louis. About 7:30 p. m., on October 28, 1954, an employee, George Tebbenhoff, was working at the check-out counter and had control of one of the company's cash registers and custody of the money therein, when two men approached the check-out counter in the usual manner, the first, Joseph Clinton Stanford, had a jar of pigs feet and, the second, James Rufus Tatum, a box of soda crackers. When Tebbenhoff rang up Stanford's purchase and was ready to wait on Tatum, Tatum without speaking a word pushed a blue barrel gun across the counter toward Tebbenhoff. Tebbenhoff was scared and threw up his hands and backed away, while Stanford grabbed all of the paper money in the cash register and then both men ran from the store. Tebbenhoff shouted an alarm and told the assistant manager what had happened. A total of $199, the property of the Kroger Grocery and Baking Company, was taken from the cash register.

Tebbenhoff did not know either Tatum or Stanford at the time of the robbery, but he saw and recognized both of them as the robbers at police headquarters on the evening of November 13, 1954. At the same time and place, he saw defendant for the first time and heard him questioned by the police officials with reference to the robbery. Only Tebbenhoff witnessed the robbery, but the assistant manager, James Pyatt, was able to give the police a description of Tatum and Stanford, since they had attracted his attention in the store before the robbery and he had observed them for

several minutes. He thought they were shoplifters. "They were talking among themselves and messing with the stuff on the shelves." Rex Victor, a clerk in the store had also observed Tatum and Stanford before the robbery. He had seen the two men enter the store, he "thought perhaps they would be shoplifters * * * they were unusual * * * These men seemed rather furtive and quick and hurried in their movements * * * they were not at all at ease."

Defendant was arrested on the evening of November 12, 1954, while driving his 1954 Mercury automobile near Easton and Vandeventer. He had just picked up Tatum and both were taken to police headquarters and questioned. See State v. Scott, Mo., 298 S.W.2d 435, involving the robbery of a Kroger Store on October 30, 1954.

On the evening of November 13, 1954, defendant, Tatum, and Stanford were questioned in the presence of Pyatt and Victor, and later in the presence of Tebbenhoff. When questioned before these witnesses, defendant told of his connection with the robbery. He said that he had picked up Tatum and Stanford in his automobile in the vicinity of Vandeventer and Easton about 7:00 p. m., on October 28, 1954; that they drove around and decided to hold up a Kroger store; and that they selected the store at 131 North Euclid. He gave a gun to Tatum and let the men out near the store, while he parked his automobile a short distance from the store and waited their return. He picked up the men after the robbery and drove them away. They returned the gun to him and distributed the proceeds of the robbery. He received between $40 and $50.

When questioned by the police at another time, defendant at first said that the gun used in the robbery was a 7.65 Belgium make pistol which was seized at the time of his arrest, but later, when Tatum could not identify the gun as the one used in the robbery, he said that the gun used was a Mauser, a German make 7.65 millimeter gun, he had obtained from Betty Maechling. When the police secured this gun from Mr. and Mrs. Maechling, defendant identified it as the one used in the robbery and he stated that he had borrowed it early in October and returned it on October 31, 1954. Both Mr. and Mrs. Maechling testified that the gun was borrowed about the middle of October 1954 and that they got it back at defendant's home on October 31, 1954.

Defendant's defense was an alibi, supported by his own testimony and that of several witnesses, to the effect that he was at home with his family on the entire evening of October 28, 1954. Defendant further testified that his wife came to the police station on November 14, 1954, after his arrest on the 12th, and that the police said that unless he confessed to this robbery they would lock up both defendant and his wife and hold them until he did confess; and that he and his wife agreed to do anything to obtain her release so that she could go back to her children and also complain to the circuit attorney's office. After his wife was released, defendant said that on the 15th he answered "yes" to all questions asked by the police concerning the robbery. Defendant denied identifying the gun used in the robbery and denied telling the police the Maechling gun was so used. He said that gun was returned to the Maechlings on October 17, 1954. Other facts will be stated in the course of the opinion.

Although defendant was charged under the Habitual Criminal Act, two prior convictions being alleged, and although defendant testified in his own behalf and admitted that he had been convicted of three felonies, to wit, grand larceny, larceny from the person and robbery in the first degree with a dangerous and deadly weapon, the jury made no finding as to any prior convictions and assessed the minimum penalty.

■■■ Error is assigned on the court's failure to direct a verdict of acquittal as requested at the close of the state's case. Such a motion was made and overruled,

but the defendant subsequently offered evidence in his own behalf and the state offered evidence in rebuttal. The error, if any, was waived. State v. Bledsoe, Mo.Sup., 254 S.W.2d 618, 622(6); State v. Grubbs, 358 Mo. 323, 214 S.W.2d 435, 436(3). Motions for directed verdict have been abolished and motions for judgment of acquittal have been substituted in their place. Supreme Court Rule 26.10. While the motion for a directed verdict was not renewed at the close of all the evidence, the defendant in his motion for a new trial does contend that there was no evidence to support the giving of the instruction on robbery in the first degree with a dangerous and deadly weapon. Defendant says there was no evidence that Charles Tebbenhoff gave up the control of any money because of fear of violence to his person. There is no merit in this contention. Tebbenhoff testified that, when he saw the gun as Tatum put it across the counter toward him, he was scared and threw up his hands and backed away while Stanford grabbed the paper money out of the cash register. This evidence was sufficient to support the instruction on the issue mentioned. State v. Herman, Mo.Sup., 280 S.W.2d 44, 46; State v. Kelley, Mo.Sup., 284 S.W. 801; State v. Burns, Mo.Sup., 280 S.W.2d 119. The state's evidence was substantial and entirely sufficient to authorize the submission of the case to the jury. State v. Scott, supra.

■ Error is assigned on the court's failure to declare a mistrial when the prosecutor, on voir dire examination of the jury, stated "that this was an information against Tatum, Stanford and defendant Scott, the defendant Scott having been granted a severance." The assignment is not supported by the record. The prosecutor, instead, said: "Throughout the evidence there will be several other names that will be mentioned. There were three men involved in this robbery. The other two men whom the state alleged were involved are James Rufus Tatum * * * and a man by the name of Joseph Clifford Stanford * * *.

Do any of you know the other two men whose names will appear throughout the course of the evidence?" When defendant's counsel asked a mistrial, he stated: "A severance has been granted and the very purpose of a severance is that this man may be tried on the merits of his case alone, not depending on whether there was or was not some one else involved in this situation; that it is a question calculated to prejudice the jury * * *." The assignment is overruled. This court has held that informing the jury that the defendant has been granted a severance is not reversible error. State v. Golden, 353 Mo. 585, 183 S.W.2d 109, 117(20).

■ Error is assigned on the admission in evidence of exhibits 2, 3, 4, 5, and 6 on the ground that they were hearsay and not the best evidence. These exhibits included a certified copy of a judgment of the Circuit Court of Cooper County, Missouri, showing a conviction of William Fred Scott for grand larceny, two certified copies of records of the Intermediate Reformatory for young men with reference to William Fred Scott, including description and data and date and circumstances of release and discharge, a certified copy of a judgment of the Circuit Court of St. Louis County showing the conviction of William Fred Scott for larceny from the person and a certified copy of the records of the Missouri State Penitentiary with reference to William Fred Scott, including data and date of discharge. The exhibits were properly certified and they were properly received in evidence. State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 332; State v. Pendergraft, 332 Mo. 301, 58 S.W.2d 290, 292; State v. Dalton, Mo.Sup., 23 S.W.2d 1, 5. Further, defendant testified in his own behalf and, on the theory of impeachment, he was asked about each of these convictions and discharges and also about another, a conviction of robbery in the first degree, and he admitted all of them. Further, the jury made no finding as to prior convictions but assessed the minimum penalty. No error appears. State v. Lord, Mo.Sup., 286 S.W.2d 737.

It is next stated that the court erred in failing to instruct on grand larceny as the evidence supported and warranted such an instruction. No instruction was requested on grand larceny and there was no evidence in the case which, if believed, would authorize or require such a finding. The state's evidence shows only robbery in the first degree by use of a dangerous and deadly weapon. Defendant's defense was an alibi. The court did not err in failing to instruct on grand larceny. State v. Whitley, 327 Mo. 226, 36 S.W.2d 937, 938; State v. Lasky, Mo.Sup., 133 S.W.2d 334, 335.

Error is assigned on the court's failure to grant a mistrial because of a witness's reference to "cases" against defendant. It is contended the jury was advised that defendant was charged with other crimes and that defendant was prejudiced thereby. After defendant's wife had testified that she went to the circuit attorney's office and talked to an assistant named William Shaw and complained to him about threats made by the police to lock her up on November 14, 1954, Shaw was called in rebuttal and testified that after defendant's case was assigned to him defendant's wife did talk to him, but that she only asked for leniency or parole for her husband. He did not remember any complaints about any threats made against her by the police. A motion to strike the last statement, as voluntary was sustained. Later, during the cross-examination of the witness as to what was said about "the case", the witness said: "I had never read the file until she came into my office and she inquired about the cases and before I could give her any intelligent answer I had to see a little bit about what the case was about and I do recall glancing briefly through the file and then talking to her." No objection was made and no motion to strike and no motion for mistrial at the time, nor until after the witness had left the witness stand and other witnesses had testified and the evidence completed and the jury excused until the next day. Counsel then moved for a mistrial because of the reference to "cases" and the motion was overruled. The question raised by the motion was within the sound discretion of the trial court and no abuse of discretion appears from the court's ruling. State v. Johnson, Mo.Sup., 286 S.W.2d 787, 795(20); State v. Scott, supra.

It is further contended that the court erred in not declaring a mistrial when the witness voluntarily referred to the request of defendant's wife for leniency or a parole for her husband. No such relief was then asked, all the relief that was asked was granted and no further relief was then requested. A further motion on the following day, to strike this evidence and for "a declaration of mistrial" was overruled because of not being timely made. No error and no abuse of discretion appears from these rulings.

Error is assigned on the court's action in overruling defendant's motion for a mistrial when the assistant circuit attorney, Edward McSweeney, testified that he had issued a warrant for defendant on November 14, 1954. Defendant's theory, as stated in the motion for a new trial, is that the statement of the witness constituted an expression of an opinion of guilt on the part of the circuit attorney's office based upon evidence not before the court. The objection made to the evidence at the time it was offered was that it had no bearing on the issues of the case, that it was not binding on anyone and that it was self-serving. The issue as to the time of the issuance of the warrant had been injected into the case by the defendant's evidence that the information was filed, November 16, 1954. The evidence was offered in support of the contention that defendant had been illegally held beyond the twenty hour limit and, consequently, his admissions were not voluntary. This issue was subsequently submitted to the jury by Instruction 6 as bearing on the voluntariness of defendant's statements. After the evidence was concluded and the jury had been excused until the following day, counsel asked the court to discharge the jury and

to declare a mistrial on the ground that the testimony, as to the issuance of the warrant on November 14, 1954, was an expression of an opinion that the defendant was guilty and that it was improper rebuttal testimony. No such objection was interposed when the questions were asked which called for the evidence in question, nor was any relief asked immediately after the answers were made. The request for a mistrial was not timely made and no abuse of the court's discretion appears from the ruling denying the request.

█ It is further contended that the court erred in permitting witness Shaw to testify in rebuttal after having been in the court room during the progress of the trial when the rule for the exclusion of witnesses was in force. Without the knowledge of the assistant circuit attorney the witness had heard only a few questions and answers of a witness then on the stand, but he had not heard any testimony with reference to the matters about which he was called to testify. The court allowed the witness to testify. The matter of allowing a witness to testify who has been in the court room in violation of the mentioned rule is a matter within the sound discretion of the trial court. State v. Compton, 317 Mo. 475, 296 S.W. 137, 138; State v. Lord, supra, 286 S.W.2d 737, 741. A careful review of the record here fails to show any abuse of the court's discretion.

The last assignment is "that the court erred in overruling defendant's motion for a mistrial and a discharge of the jury because of the improper conduct of the circuit attorney in placing an arrest card and record of the Federal Bureau of Investigation in such a manner upon counsel table that the same could be read by the jury."

█ During the course of the trial, while defendant was being cross-examined, defendant's counsel, out of the hearing of the jury, asked the court to declare a mistrial on the ground that certain United States Department of Justice records were on the counsel table where a juror could hardly help seeing the contents of the document. He said that she had been "looking." There was no charge that she had in fact read any part of the document. Counsel said: "I don't know whether she has read it or not." Counsel for the state disclaimed any intention to place the document where it could be read by the juror. The court said the document referred to was "a good four or five feet away from" the juror mentioned. The motion for a mistrial was denied. The record on the table admittedly pertained to defendant. It was in typewritten form and showed certain prior convictions of defendant, some of which had already been proven by the state and all of which were subsequently admitted by defendant. The request for the discharge of the jury was based upon the alleged misconduct of counsel for the state. The court in effect held that there had been no misconduct, although the court did order the document put away "so that it can't be seen by the jury." In any event the granting of a mistrial because of misconduct of an attorney rests to a large extent within discretion of the trial court. State v. Wilkins, Mo.Sup., 100 S.W.2d 889, 896; State v. Eison, Mo.Sup., 271 S.W.2d 571, 572. On the record presented the court did not abuse its discretion in denying a mistrial on the ground stated.

█ The information was sufficient in form and substance and the verdict responsive, since it found defendant guilty of the charge made against him and fixed the punishment within the limits prescribed for such an offense. Section 560.135 RSMo 1949, V.A.M.S. It is immaterial that the verdict failed to specify the place of confinement. Its meaning is clear and the omission did not affect its validity. State v. Herman, supra, 280 S.W.2d 44, 46(6); State v. Kenton, Mo., 298 S.W.2d 433; State v. Schmitz, Mo.Sup., 46 S.W.2d 539,

540. Allocution was afforded and judgment and sentence duly entered and pronounced.

Finding no reversible error, the judgment is affirmed.

All concur.