STATE of Missouri, Respondent,

v.

John Sherman MILES, Appellant.

No. 49415.

Supreme Court of Missouri,

Division No. 1.

Feb. 11, 1963.

J. K. Owens, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Timothy G. Noble, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

DALTON, Presiding Judge.

Defendant was charged by an information filed in the Circuit Court of Clinton County, Missouri, with the crime of stealing property having a value of more than fifty dollars, to wit: five diamond rings of the value of $700, the personal property of one F. H. Ames. On trial the jury returned a verdict of guilty of felonious stealing, as charged in the information, and assessed defendant's punishment at one year's imprisonment in the county jail. A motion for new trial was filed and overruled and, after judgment and sentence, defendant filed notice of appeal.

The transcript on appeal fails to show that defendant was formally arraigned and entered a plea of not guilty; however, defendant was represented by counsel and announced ready and went to trial on the 11th day of January, 1962. In view of this record the failure of the transcript to show formal arraignment and a plea of not guilty does not constitute reversible error. See Section 546.020 RSMo 1959, V.A.M.S.; Supreme Court Rule 25.04, V.A.M.R.

Appellant has not favored us with a brief and it will be necessary for us to examine the assignments of error in his motion for a new trial. One of these assignments is that the court erred in overruling defendant's motion for a judgment of acquittal tendered at the close of all the evidence. It is, therefore, necessary for us to review the evidence favorable to the State.

The State's evidence tended to show that one Floyd Herbert Ames was the sole owner of a jewelry store located in Cameron, Clinton County, Missouri, and that on March 25, 1960, a man and a woman entered his jewelry store and asked to look at some men's diamond rings. Mr. Ames was not acquainted with either of the parties at that time, but at the trial he identified the defendant as the man and he named Helen Mae Morris as the woman. They entered his store about 3:30 p. m. and Mr. Ames, in waiting on them, obtained a tray of rings from his safe which contained two men's rings with diamond settings. He placed the tray on the counter and exhibited the rings to the parties. Defendant said he liked the larger of the two rings "pretty well." Thereafter, defendant asked Mr. Ames if he had any larger diamonds. Mr. Ames replied that he had one, and he also had some mountings to show him. Mr. Ames then obtained a larger stone and about six mountings and stepped up front to better show them to defendant. In doing so he had walked some ten feet forward from where they had looked at the other rings in the tray on the counter.

While Mr. Ames was exhibiting the larger stone and the mountings to defendant, defendant's companion, Helen Mae Morris, would walk back and forth to where Mr. Ames had placed the tray containing the other rings. Defendant would frequently ask her opinion of the different mountings presented to him, and he would say he

didn't like some and did like others. The lady "always would say, 'I like that one, but I like this one back here too.'" This occurred three or four times and finally defendant said: "I think that I like this one, and I will probably be back to have you mount this one up for me, but I want to think about it a few minutes." Defendant and his companion then left the jewelry store and Mr. Ames went back to check the tray on the counter and he promptly noted that the man's ring they were looking at was not there. He immediately went to the door and, as he stepped out on the sidewalk, he saw a car was parked immediately in front of his store and just back of it was a Chevrolet Impala, a dark-colored car, and defendant was under the wheel and had the motor started. The lady was sitting close to him and was showing him something she had in her hand. When she saw Mr. Ames she put her hands down in her lap. Mr. Ames motioned to defendant and said, "Hold it, I want to talk to you." However, defendant didn't "hold it", but "took off very speedily around this other car." Mr. Ames' took the license number of the car and observed it as it went through two stop signs without stopping.

At the trial Mr. Ames identified defendant as the man who had been at his store on the occasion in question, and he also identified three exhibits, to wit: two sets of ladies' rings (each consisting of an engagement and a wedding ring) which had been in one of the trays that he put on the counter and also one gentleman's ring, which had been shown to defendant. He stated that all of the rings were his property and were missing from his store after defendant's visit. He fixed the value of one set of ladies' rings at $350, the other set at $300, and the gentleman's diamond ring at $225.

On cross-examination Mr. Ames testified that he was facing the defendant at all times; that he didn't know whether or not the defendant personally took the rings from his store; that he did not see defend-

ant take the rings; and that part of the time defendant was about ten feet away from where the rings were placed on the counter. Defendant wore a dark suit with large patch pockets.

Other testimony tended to show that about five o'clock on the same afternoon (March 25, 1960) the Sheriff of Clinton County, William Ditto, went out to a particular place on a country road or "lane" about three quarters of a mile northwest of Plattsburg in Clinton County. The place was about a quarter of a mile west of County Road "Y". At a gate on the north side of the mentioned "lane", the sheriff found a box filled with different articles of women's and men's clothing, skirts, suits and other articles, some of which bore sales price tags. He also found a new chain saw beside the box. He took this box and the chain saw to his home and while he and his wife were examining the articles from the box they found five rings in the toe of a ballerina shoe. The five rings were those offered in evidence at the trial and identified, as stated, by Mr. Ames as his property.

About 6:30 p. m. on the same day the sheriff called one of his deputies and sent him out to "stake out" the place where the sheriff had removed the box and the chain saw from beside the road. About 7:30 p. m. the deputy "radioed" the sheriff and the sheriff went out immediately to the place where he had found the mentioned merchandise. When he arrived, he found the deputy with an automobile across the road some 200 yards west of the place where the merchandise had been found. The sheriff drove his car in from the east on the same road and between them was a car with two men in it. It was a '57 Dodge. The two men were ordered out of the car and placed under arrest. Defendant was one of the men, and he was seated under the steering wheel of the car. The men were taken to the sheriff's office where they were questioned by the sheriff and others. Defendant admitted that he had been in Cameron on the evening in question to see

about a horse or something, and that he had a girl with him. He further stated that he and the girl were in the jewelry store in question; and that the girl had some rings in her hand on the way home after they left Cameron. On the same night the defendant also told the sheriff that he was out on this "lane" looking for a poker game and that he and the other fellow were both looking for a game in Excelsior Springs. On cross-examination the sheriff said the defendant may have denied he was in Cameron on the night of his arrest, but that he didn't deny it the next morning.

Defendant took the stand in his own behalf and testified that he worked at Sheffield Steel; that he lived at 8819 South Noland, Kansas City, Missouri, near Raytown, where he owned thirty-seven acres; that he bought livestock, traded horses and other livestock; and that he was not in Cameron on March 25, 1960. He further denied that he had told the sheriff that he was in the jewelry store with a woman on that date, or that she showed him any rings in the car. He further testified that at the time of his arrest he was on his way to Cameron to buy some livestock, but that the fellow with him was driving and they got lost "going to Cameron"; and that as they were driving up the road, or "lane", in question, they came upon a police car across the road, and they just kept sitting in the car until they were ordered out.

■■ The motion for judgment of acquittal presented at the close of all the evidence charged that the State had failed to prove facts sufficient "to constitute a cause of action against the defendant"; and that the facts "attempted" to be proven in this case were insufficient, as a matter of law, to prove defendant guilty of the charge or to constitute substantial evidence against him. In determining the issue presented we consider the evidence favorable to the State as true, disregard defendant's evidence and give the State the benefit of all favorable inferences reasonably to be drawn from all the evidence. When so considered the evidence was sufficient to support a finding that defendant and his companion were acting together with a common intent to steal the rings from the store, since the rings were missed immediately after the two left the jewelry store. Guilty knowledge and cooperation with his companion could be inferred on defendant's part from defendant's refusal to stop when Mr. Ames attempted to stop him, and from the rapidity with which the automobile was driven away. The failure to stop at the two stop signs further evidenced haste to escape. An inference could be drawn from the presence (a few hours later) of the rings and other property by a gate on a country "lane" off an improved road that defendant and his companion had placed the property there for fear of hot pursuit and interception by officers of the law; and that the rings had been so placed is further supported by the fact of defendant's return later the same evening to the place where the property had been stored, although he was then accompanied by a male companion and was driving a different automobile. The evidence was substantial and sufficient to support the submitted finding "beyond a reasonable doubt * * * that at the County of Clinton and State of Missouri on or about the 25th day of March, 1960, the defendant, John Sherman Miles, either alone or knowingly acting in concert with another, did wilfully, unlawfully and feloniously take, steal and carry away five diamond rings from the possession of F. H. Ames with the intent to unlawfully and feloniously convert the same to his own use and permanently deprive the owner thereof without his consent, and that the same were the property of F. H. Ames and of the value of $50 or more * * *." State v. Dowling, 360 Mo. 746, 230 S.W.2d 691, 694(4, 5).

■ Error is also assigned on the court's action in overruling defendant's motion for judgment of acquittal offered at the close of the State's evidence. There is no merit in this assignment as the mo-

tion was waived when defendant took the stand and testified in his own behalf. State v. Scott, Mo.Sup., 299 S.W.2d 526, 528(1, 2); State v. Deyo, Mo.Sup., 358 S.W.2d 816, 819(1).

■ It is further charged that the court erred in not discharging the jury panel because, after voir dire examination and before the trial jury had been selected, the complaining witness had talked with propective jurors. One of the jurors testified that, after the voir dire examination was completed, he returned to a hall outside the courtroom and, while standing with four other men, Mr. Ames (the prosecuting witness) spoke to them, talked about the weather and "passed the time of day," but said nothing about the case. Mr. Ames also testified that he saw and spoke to this juror in the hall and the juror asked him whether or not this case had ever been tried before and he replied that it had not. In this connection we may say that it subsequently appeared at the trial that Helen Mae Morris had been previously tried and discharged in connection with the alleged theft from the Ames Jewelry Store. Apparently the inquiry may have resulted from this fact. Defendant also testified that he saw Mr. Ames talking to jurors in the hall but did not know what they were talking about. Defendant's counsel testified that he saw Mr. Ames talking to the jurors and overheard only the words "he is tough", but heard no names mentioned. The court considered the evidence and overruled the motion to discharge the panel. There was no other evidence tending to show that Mr. Ames did anything more than casually "pass the time of day" or recognize acquaintances. Mr. Ames, being a jeweler at Cameron for some thirty-eight years, was no doubt well known to some of the jurors and in "passing the time of day" with them in the hall in the presence of others no prejudice to defendant necessarily resulted. In any case, a determination of the matter was for the trial court under the evidence presented. While the conduct of a prosecuting witness in even innocently visiting with the jurors is to be avoided, nevertheless, the court had broad discretion in determining whether a mistrial should be declared and, under the facts shown, the court did not abuse its discretion in overruling the motion to declare a mistrial and discharge the jury panel. State v. Akers, Mo.Sup., 328 S.W.2d 31, 34–35. And see State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 123; State v. Scott, supra, 299 S.W.2d 526, 530 (6); State v. Taylor, Mo.Sup., 324 S.W.2d 643, 648, 76 A.L.R.2d 671.

■ It is next contended that the court erred in permitting the sheriff to testify as to what was said by people when the defendant was not present and in allowing the sheriff to testify to statements made by the defendant while he was under arrest and before arraignment. The testimony intended to be referred to in the first portion of this assignment is not sufficiently pointed out and we cannot determine from a reading of the record to what evidence the assignment is directed, in fact we find no such evidence. As to the second portion of the assignment, we find no testimony of the sheriff with reference to any statements by defendant that were admitted over defendant's objections. In any case, none of the evidence intended to be referred to is pointed out with sufficient particularity to comply with Supreme Court Rule 27.20. No error appears.

■ Error is assigned on the court's action "in allowing the complaining witness to testify, over the objection of the defendant, to hearsay evidence and to evidence as to his opinion." This assignment is insufficient to preserve anything for review; however, no such evidence was admitted over defendant's objection.

■ Error is assigned on the court's action in giving Instruction 1 for the reason that said instruction was broader than the information; and that "it assumed facts not in evidence and * * * commented upon the evidence." This assignment is

insufficient to preserve anything for appellate review because it does not point out in what respects the instruction was broader than the information, or state what facts not in evidence were assumed or in what way it commented upon the evidence. Supreme Court Rule 27.20. While the charge in the information was directed to defendant alone, under the facts in evidence, nevertheless Instruction No. 1 was not erroneous because it contained the abstract statement that "all persons who act together with a common intent in the commission of a crime are equally guilty", because the instruction then proceeded to require a finding as hereinbefore set out. State v. Clark, Mo.Sup., 277 S.W.2d 593, 602(11); State v. Burns, Mo.Sup., 280 S.W.2d 119, 122(4); State v. Reece, Mo.Sup., 324 S.W.2d 656, 660(9); State v. Harris, Mo.Sup., 351 S.W.2d 713, 716(6); State v. Russell, Mo.Sup., 324 S.W.2d 727, 732(11).

Error is further assigned in the motion for a new trial on the court's action in giving Instructions 2 and 3 for the reason that "they did not properly state the law in regard to said instructions." It is also charged that "the verdict of the jury was against the law"; and that "the verdict of the jury was against the weight of the evidence." These assignments are not sufficient to preserve any matter for appellate review. Supreme Court Rule 27.20. State v. Murray, Mo.Sup., 280 S.W.2d 809, 813(13, 14); State v. Harris, Mo.Sup., 356 S.W.2d 889, 891(6); State v. Alberson, Mo.Sup., 325 S.W.2d 773, 775(2); State v. Garcia, Mo.Sup., 357 S.W.2d 931, 934(2).

The final assignment of error in the motion for new trial is that the verdict was the result of a compromise for the reason that the charge in the information and the evidence offered at the trial was to the effect that the property alleged to have been stolen had a value far in excess of $500, and the fact that defendant received only a sentence of one year in jail evidenced a compromise verdict. We find no merit in this assignment. The facts stated do not support the conclusion. The offense charged only required a finding that the value of the property stolen was "at least fifty dollars". Section 560.161 RSMo 1959 (Laws 1955, p. 507), V.A.M.S. A wide range of punishment was provided by the statute and the extent of the punishment was in nowise based upon or contingent upon the value of the property taken in excess of fifty dollars. Many factors may have entered into the determination of the extent of the punishment, including the fact that the property was recovered.

No prejudicial error appears in connection with those matters which we review upon the record under Supreme Court Rule 28.02 even though defendant has made no allegation of error with respect thereto.

The judgment is affirmed.

All of the Judges of the Division concur, and HUNTER, Special Judge, concurs.