THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HOWARD B. REESE, Appellant.

90

(Submitted November 23, 1931; decided January 5, 1932.)

*Caesar B. F. Barra* and *Ralph J. Barra* for appellant. The trial court erred in holding that the hearing or the information was not a criminal proceeding supplemental to the original criminal action upon the indictment filed against the defendant. (*People* v. *Gowasky*, 244 N. Y. 451; *People* v. *Rosen*, 208 N. Y. 169; *People* v. *Sickles*, 156 N. Y. 541; *People* v. *Raymond*, 96 N. Y. 38; *Johnson* v. *People*, 55 N. Y. 512; *People* v. *Brennan*, 229 App. Div. 378; *People* v. *Schaller*, 224 App. Div. 3; *People* v. *Rocco*, 229 App. Div. 847.) The trial court erred in holding that the defendant was not entitled to any peremptory challenges. (*People* v. *Schaller*, 224 App. Div. 3; *People* v. *Youngs*, 1 Caines, 37; *People* v. *Rosen*, 208 N. Y. 169; *People ex rel. Bretton* v. *Schleth*, 68 Misc. Rep. 307; Penal Law, §§ 2188, 2189; *Graham* v. *West Virginia*, 224 U. S. 616; *McDonald* v. *Massachusetts*, 180 U. S. 311; *Phelps* v. *People*, 72 N. Y. 334; *State* v. *Thomas*, 2 McCord, 527; *People* v. *Sickles*, 156 N. Y. 541.) The trial court erred in admitting in evidence the fingerprint records of the defendant taken in New York as violative of defendant's constitutional right not to be compelled to be a witness against himself. (*People* v. *Sallow*, 100 Misc. Rep. 447; 3 Wigmore on Evidence, § 2263; *Brown* v. *Walker*, 161 U. S. 591; *People* v. *Gardner*, 144 N. Y. 119; *People* v. *Van Wormer*, 175 N. Y. 188; *Counselman* v. *Hitchcock*, 142 U. S. 547.) The trial court erred in admitting in evidence the fingerprint records of the defendant taken in and sent from other States. (Civil Rights Law, § 12; Code Crim. Pro. § 8; *People* v.

*Bromwich*, 200 N. Y. 385.) The trial court erred in charging the jury that the identity of the defendant under the information filed must not be proven beyond a reasonable doubt and in refusing to charge that it must be proven beyond a reasonable doubt. (*People* v. *Brennan*, 229 App. Div. 378; *People* v. *Levalie*, 6 App. Div. 230; *People* v. *Taylor*, 92 App. Div. 29.)

*Thomas C. T. Crain, District Attorney (Felix C. Benvenga* and *A. A. De Vito* of counsel), for respondent. The defendant was not entitled to peremptory challenges. (*People* v. *Schaller*, 224 App. Div. 3; *People* v. *Hughes*, 137 N. Y. 29; *People* v. *Bodine*, 1 Den. 381; *People* v. *McQuade*, 110 N. Y. 284; *Waggoner* v. *Dodson*, 68 S. W. Rep. 813; *Rex* v. *Okey*, 1 Lev. 61; *Rex* v. *Radcliffe*, 1 W. Bl. 3; *Johnson's Case*, Foster's Crown Law, 46; *Brooks* v. *Commonwealth*, 41 Va. 845; *People* v. *Youngs*, 1 Caines, 37; *Freeman* v. *People*, 4 Den. 9; *People* v. *Lawson*, 178 Cal. 722.) The admission of the fingerprint records did not violate the defendant's right of confrontation. (*People* v. *Dow*, 64 Mich. 717; *Heike* v. *United States*, 192 Fed. Rep. 83; 227 U. S. 131; *Commonwealth* v. *Slavski*, 245 Mass. 405; *Commonwealth* v. *Dorr*, 216 Mass. 314; *State* v. *Torello*, 103 Conn. 511; *Stacy* v. *State*, 292 Pac. Rep. 885; *People* v. *Sallow*, 100 Misc. Rep. 447; *State* v. *Bolen*, 254 Pac. Rep. 445; *State* v. *Guidry*, 169 La. 215; *State* v. *Bullis*, 196 Iowa, 480; *State* v. *Payne*, 223 Mo. 112; *State* v. *Austin*, 113 Mo. 538.) The admission of the fingerprint records did not violate the defendant's privilege against self-incrimination. (*Moon* v. *State*, 22 Ariz. 418; *State* v. *Cerciello*, 86 N. J. L. 309; *People* v. *Sallow*, 100 Misc. Rep. 447; *People* v. *Strallo*, 191 N. Y. 42; *People* v. *Ales*, 247 N. Y. 351; *People* v. *Defore*, 242 N. Y. 13; *People* v. *Huntei*, 139 Misc. Rep. 270; *Holt* v. *United States*, 218 U. S. 245; *People* v. *Gardner*, 144 N. Y. 119; *People* v. *Van Wormer*, 175 N. Y. 186; *McGarry* v. *State*, 82 Tex. Cr. Rep. 597; *State* v. *Griffin*, 129 S. C. 200.) Section 482-b of the Code

of Criminal Procedure warrants the admission of finger-print records of other jurisdictions. (*Smith* v. *People,* 47 N. Y. 330; *People ex rel. Doscher* v. *Sisson,* 228 N. Y. 387; *Mullaly* v. *Mayor,* 3 Hun, 661; 62 N. Y. 636; *People* v. *Gowasky,* 244 N. Y. 451; *People* v. *Bergman,* 176 N. Y. 318; *Jackson* v. *King,* 5 Cow. 237; *Nolan* v. *Nolan,* 35 App. Div. 337; *Evanston* v. *Gunn,* 99 U. S. 600; *White* v. *United States,* 164 U. S. 100; *Richards* v. *Robins,* 178 App. Div. 535; *Russell* v. *Brooklyn Eagle,* 168 App. Div. 121; *Saranac L. & T. Co.* v. *Roberts,* 208 N. Y. 288; *People* v. *Gray,* 25 Wend. 465; *State* v. *Bullis,* 196 Iowa, 480; *State* v. *Dowden,* 137 Iowa, 573; *State* v. *Roberts,* 275 Pac. Rep. 60.) A proceeding under section 1943 of the Penal Law is collateral to the original trial and as the averment of prior convictions merely affects the question of punishment, and not the question of guilt or innocence, the doctrine of reasonable doubt is wholly inapplicable. (*People* v. *Schaller,* 224 App. Div. 31; *People* v. *Rocco,* 229 App. Div. 847; *Brunson* v. *State,* 4 Okla. Cr. Rep. 467; *State* v. *Jackson,* 142 La. 540; *Commonwealth* v. *Ford,* 111 Mass. 394; *State* v. *Smith,* 102 Iowa, 656; *Jacobs* v. *United States,* 24 Fed. Rep. [2d] 891; *State* v. *West,* 175 Minn. 516; *State* v. *Bizer,* 113 Kan. 731; *Files* v. *State,* 182 Pac. Rep. 911; *State* v. *Court,* 225 Mo. 609; *State* v. *Lashus,* 79 Me. 504; *Kane* v. *Commonwealth,* 109 Penn. St. 541; *Colbert* v. *State,* 125 Wis. 423; *Hatcher* v. *Rocheleau,* 18 N. Y. 86; *People* v. *Snyder,* 41 N. Y. 397; *People ex rel. Haines* v. *Smith,* 45 N. Y. 772; *Layton* v. *Kraft,* 111 App. Div. 842; *Bayha* v. *Montford,* 59 Kan. 445; *State* v. *Smith,* 129 Iowa, 709.)

CARDOZO, Ch. J. Upon a plea of guilty the defendant was convicted in the Court of General Sessions, county of New York, of attempted forgery in the third degree. Thereafter, before sentence was imposed, the District Attorney filed an information, in accordance with Penal Law, section 1943, accusing him of having been con-

victed of three crimes which would have been felonies if committed in New York. He was accused of having been convicted of forgery under the name of E. F. Lathrop in Spokane county, Washington, of having been convicted of the crime of false pretenses under the name of E. E. Lewiston in Larimer county, Colorado, and of having been convicted of forgery under the name of Earl Freeman Lathrop in Multnomah county, Oregon.

Arraigned in response to this information, and cautioned as to his rights, the defendant stood mute. A jury, which was thereupon impaneled to determine his identity, found him to be the same person previously convicted. He was sentenced as a fourth offender to imprisonment for life.

(1) The defendant makes the claim that the evidence offered by the People to establish his identity is insufficient and incompetent.

The form of proof was the same as to each of the three felonies. The conviction of forgery in Oregon will illustrate them all. A police officer who had taken the defendant's fingerprints after his conviction in the Court of General Sessions in this State, produced the prints then made. There was then produced an exemplified copy of an indictment of Earl Freeman Lathrop for forgery, and of the conviction and sentence thereunder in a court of competent jurisdiction in Multnomah county, Oregon, with the warrant of commitment. Next there was received a certificate signed or purporting to be signed by the custodian of fingerprint records in the Oregon State Penitentiary, certifying that the records in his custody show " a previous conviction of a person whose fingerprints are identical with those hereto attached," adding a description of the crime and the sentence. Two sets of fingerprints were attached: one a set of fingerprints displayed upon a sheet of paper with the printed heading of the Bureau of Criminal Identification of the city of New York; the other a set of prints purporting to have

been made at the State Penitentiary in Oregon. On the production of this certificate, a member of the police force of the city of New York, who qualified as an expert, testified that the defendant's fingerprints taken in this State and the fingerprints attached to the certificate from Oregon were those of the same person.

Code Criminal Procedure, section 482-b, enacted in 1927, provides as follows: " The report of a person charged with the custody of fingerprint records of persons convicted of crime, who shall certify in writing that the records in his custody show certain previous convictions of persons whose fingerprints are identical with those of a defendant shall be presumptive evidence of the fact of such previous convictions of such defendant."

The defendant argues, and we think correctly, that this statute does not apply to a certificate by a custodian of fingerprints in a State other than our own. No doubt a foreign custodian, annexing fingerprints to his certificate, would be competent to certify without the aid of any statute that they were prints or copies of prints kept upon his files in conformity with law and to state, after comparison with the warrant of commitment, the name of the prisoner whose prints were so recorded (3 Wigmore on Evidence, § 1677, p. 552). There would be a presumption in such circumstances that the prisoner fingerprinted was the prisoner committed, the presumption being merely an instance of the more general presumption of official regularity (3 Wigmore on Evidence, § 1635, p. 401; § 1636, pp. 402, 403; *Chesapeake & Delaware Canal Co.* v. *United States,* 240 Fed. Rep. 903, 907; *Gaines* v. *Relf,* 12 How. [U. S.] 472, 570; *Evanston* v. *Gunn,* 99 U. S. 660; *Commonwealth* v. *Slavski,* 245 Mass. 405, 415, and cases there cited). *People* v. *Bromwich* (200 N. Y. 385) is not a decision to the contrary. It rests upon the ground that the so-called rule of confrontation forbids the introduction of a certificate by a foreign officer that a record does *not* exist, a certificate wholly negative (cf. 3 Wigmore

on Evidence, § 1678, p. 560). The decision goes to an extreme limit of strictness, but it does not touch the admissibility of a certificate, affirmative in tenor, annexing copies of the records and attesting their correctness. The rule of confrontation which in this State is purely statutory (Civil Rights Law [Cons. Laws, ch. 6], § 12; Code Crim. Pro. § 8), has never been deemed to require the exclusion of certificates or records made by a public officer in the course of his official duty (3 Wigmore on Evidence, § 1398, p. 109; *Commonwealth* v. *Slavski*, 245 Mass. 405, 414, 415, 417; *Heike* v. *United States*, 192 Fed. Rep. 83). If the certificate under the Code were merely one attesting the identity of records in the custody of the certifying officer, there would be little difficulty in applying the Code provisions to officers in other States. Upon proof that a person bearing the same name (5 Wigmore on Evidence, § 2529, p. 531; *Rex* v. *Levy*, 8 Cox Cr. C. 73; *Bayha, Barber & List* v. *Mumford*, 58 Kan. 445; *Ayers* v. *Ratshesky*, 213 Mass. 589) had been convicted by a court of competent jurisdiction, a certificate, so framed, would be admissible in evidence, if properly authenticated. Identity of name is not always sufficient in a criminal prosecution to show identity of person (*Ayers* v. *Ratshesky, supra*), but it may be accepted as sufficient if fortified by circumstances, as, for example, by reasonable coincidence of time between the conviction and the prints, and by the duty of the officer, presumably discharged, to ascertain that the person fingerprinted is the one described in the commitment. The certificate being received, comparison of the prints annexed with the prints of the defendant on file in this State, could then be made in open court by a witness qualified to testify (*People* v. *Roach*, 215 N. Y. 592, 604).

The difficulty in this case has its origin chiefly in the fact that section 482-b of the Criminal Code does not limit the custodian to a certificate as to the genuineness of the prints and a statement from the warrant of commit-

ment of the name of the prisoner whose prints have been recorded. He is to certify to much besides. He is to certify to his opinion that the prints which he attaches to his certificate are identical with those of the defendant, and the opinion is to be taken as presumptively correct. Plainly a custodian of foreign records is in no position to make the comparison or to venture the opinion which the statute has in view. The data necessary to the formation of a judgment are not in his possession. If the certificate sanctioned by the Code is confined to fingerprints taken in this State, the statute becomes workable. The domestic custodian has upon the files of his bureau the prints of defendants convicted in our courts, prints presumably taken in conformity with law (cf. Code Crim. Pro. §§ 940–949, as amended by Laws of 1928, ch. 875). He is thus in a position to make the comparison permitted by the statute and to express an opinion that the prints are the same. If the defendant challenges the opinion, the maker of the certificate is here, and can be produced and cross-examined. None of these tests is available in the case of a custodian absent from the State. Such a custodian when he expresses an opinion that two sets of prints are those of the defendant is making a comparison without knowledge of one of the two things which he is expected to compare. He knows something about the prints of a convict imprisoned in his State. He knows nothing about any others except that a group of prints, bearing a heading which indicates that they have been transmitted to him by the Police Department of New York, but not otherwise authenticated, are in his hands for comparison. He does not know when or where or by whom they were made or whether they are genuine or fictitious. How is it possible for him to certify in the language of the statute "that the records in his custody show certain previous convictions of persons whose fingerprints are identical with those of a defendant"?

The argument may be made that so much of the foreign certificate as expresses a comparison between the foreign prints and others may be rejected as surplusage, and the certificate accepted as identifying the foreign ones only. In that view the effective comparison would be the one made upon the witness stand. At this point, however, another difficulty confronts us. The foreign certificate is not so authenticated as to be evidence of anything. All that is given us is a document signed by a person who describes himself as the custodian of the fingerprint records of persons convicted of crime. Neither the official character of the signer nor the genuineness of his seal and signature nor the regularity of his certificate is vouched for or attested by any one. We take judicial notice of the authority, and at times even of the signatures, of public officers acting in this State in accordance with our laws. The boundaries of judicial notice are narrower when the officer who certifies is acting under the laws of another State or country (3 Wigmore on Evidence, § 1679, p. 563). We assume that a custodian of a record has authority, by implication of his office, to certify a copy (3 Wigmore on Evidence, § 1677, p. 552; *United States* v. *Percheman*, 7 Pet. [U. S.] 51, 86). Whether there is such a custodian is, however, the pivotal fact upon which implication is dependent (3 Wigmore on Evidence, § 1677, p. 553). There is nothing in this record to inform us whether any such office as that of custodian of fingerprints exists in the State where the certificate was given. There is nothing to inform us whether the person whose name is affixed to the certificate is the incumbent of such an office. There is nothing to inform us (if he is the incumbent) whether his signature is genuine. Authentication is not merely defective. It is lacking altogether (3 Wigmore on Evidence, § 1679, pp. 561, 563; cf. United States Code, tit. 28, § 688; Civ. Prac. Act, § 344).

Other objections to the judgment are made by the

defendant, and should be considered at this time, for they are certain to recur.

(2) The defendant assigns as error a ruling of the trial court that the case for the People did not require proof beyond a reasonable doubt, but would be sufficiently made out by a preponderance of evidence, and also a ruling that in determining the defendant's identity the jury might properly consider the defendant's failure to take the stand as a circumstance against him.

The procedure upon an inquiry such as the one before us is regulated by section 1943 of the Penal Law as follows: " If at any time, either after sentence or conviction, it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth either in section nineteen hundred and forty-one or nineteen hundred and forty-two, it shall be the duty of the district attorney of the county in which such conviction was had to file an information accusing the said person of such previous convictions. Whereupon, the court in which such conviction was had shall cause the said person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegations contained in such information and of his right to be tried as to the truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such information or not. If he says he is not the same person or refuses to answer, or remains silent, his plea, or the fact of his silence, shall be entered of record and a jury shall be empanelled to inquire whether the offender is the same person mentioned in the several records as set forth in such information. If the jury finds that he is the same person or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he is the same person, the court shall sentence him to the punishment prescribed in said sections nineteen hundred and forty-one and nineteen hundred and forty-two, as the case may be, and shall vacate the previous

sentence, deducting from the new sentence all time actually served on the sentence so vacated. Whenever it shall become known to any warden or prison, probation, parole, or police officer or other peace officer that any person charged with or convicted of a felony has been previously convicted within the meaning of said sections nineteen hundred and forty-one or nineteen hundred and forty-two, it shall become his duty forthwith to report the facts to the district attorney of the county."

To justify a verdict that the defendant charged in the information is the person previously convicted, the jury should be satisfied of his identity beyond a reasonable doubt.

We are not required to hold that the persuasiveness of proof essential at such a time is governed by section 389 of the Code of Criminal Procedure, whereby " a defendant in a criminal action is presumed to be innocent, until the contrary be proved; and in case of reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal." That section is part of title VII of part IV of the Criminal Code, which has to do with the trial of indictments. An inquiry as to identity after guilt has been established is not the trial of an indictment (*People v. Gowasky*, 244 N. Y. 451). To say this is not equivalent, however, to solving the whole problem. The necessity of proof beyond a reasonable doubt is not limited to cases within the letter of section 389. If it were, there would be no such requirement in prosecutions begun by an information, and triable, as many misdemeanors are triable, by a court without a jury. The necessity for a higher degree of persuasiveness than a mere preponderance of evidence exists at common law in criminal cases generally (5 Wigmore on Evidence, § 2497), and would supply the governing rule even though section 389 of the Criminal Code had never been enacted. Unquestionably this inquiry is a criminal case, and not a civil one. Unquestionably it was so conceived of by the law-

makers, for by the terms of the statute it is made the duty of the District Attorney to file an information " accusing " the defendant of the previous convictions. The section from beginning to end speaks the language of the criminal law. Not only is the proceeding punitive in form, it is punitive also in effect. The answer made to the " accusation " by the verdict of the jury may mean that the defendant will be a free man after a brief term of confinement, or may mean, on the other hand, that he will be a prisoner for life. If the previous convictions had been charged in an indictment, there is no doubt that they must have been proved beyond a reasonable doubt, for they would then have been elements affecting the grade of the offense (*People* v. *Gowasky, supra; People* v. *Sickles,* 156 N. Y. 541). We find no token of a purpose to abate the measure of the proof upon an inquiry as to the same elements after guilt has been adjudged. The genius of our criminal law is violated when punishment is enhanced in the face of a reasonable doubt as to the facts leading to enhancement. If that genius is to be expelled, there should be a clear announcement of the purpose to drive it forth from the dwelling it has inhabited so long.

There are conflicting decisions on the subject in the courts below. The Appellate Division for the first department has held in a case decided without opinion that a preponderance of evidence suffices (*People* v. *Rocco,* 229 App. Div. 847); the Appellate Division for the fourth department in an opinion by SEARS, P. J., has held the opposite (*People* v. *Brennan,* 229 App. Div. 378).

Error, we think, there also was in the instructions to the jury that upon the trial of an information under Penal Law, section 1943, the failure of the defendant to take the stand may be considered by the jury to be a circumstance against him.

We have no thought in thus holding to intimate a belief that a statute permitting adverse comment in

such circumstances would impair the constitutional privilege against self-incrimination (cf. Hiscock, Criminal Law and Procedure in New York, 26 Columbia Law Rev. 259, 260). In our view of the case, no such question is before us. We deal with the question solely in the aspect of statutory construction, and so viewing it, we are satisfied that the comment is forbidden. By the express terms of section 1943 of the Penal Law, the defendant against whom the information is presented must be " cautioned as to his rights." This can only mean that he may speak or be silent as he prefers, and that silence, if preferred, will not tend to his prejudice. " The defendant in all cases may testify as a witness in his own behalf, but his neglect or refusal to testify does not create any presumption against him " (Code Crim. Pro. § 393). It is far too narrow a reading of this section to limit it by force of its position in title VII, part IV, of the Code to a privilege arising upon the trial of an " indictment " (cf. Code Crim. Pro. § 2). If that were its full meaning, a failure to take the stand might give rise to a presumption against a defendant whenever an information was the basis of a charge against him. Even the privilege to testify, which is conferred by the same section, would be subject in that view to a like restriction. The common understanding of the bench and bar is a sufficient answer to an attempt so to circumscribe the field of these procedural reforms. Irrespective of its place in the divisions of the Code, section 393 applies by its very terms, " in all cases," i. e., in all criminal cases, without reference to the manner in which the prosecution was begun. We have seen that an inquiry to ascertain the previous convictions of one found guilty of a felony is to be treated as a criminal case. The whole structure of section 1943 of the Penal Law shows that this was its dominant quality in the thought of the framers of the statute. If so it is to be viewed, the incidents of a criminal case must be held to go along with it, including both

the privilege to testify and the exemption from adverse presumption in the event of unwillingness to testify. If the Legislature desires to abrogate that exemption, it must speak with a clearer voice.

(3) The defendant assigns as error a ruling of the trial court that there were to be no peremptory challenges, and that any challenges to be allowed must be made for cause.

The provisions of the Criminal Code regulating peremptory challenges must be viewed upon the background furnished by the history of the criminal law. For centuries the privilege of such a challenge has been denied whenever the proceeding, though triable by a jury, has been collateral to the general issue of the defendant's guilt or innocence (*Rex* v. *Okey*, [1674] 1 Lev. 61; *Johnson's Case*, [1728] Foster's Crown Law, 46; *Rex* v. *Radcliffe*, 1 W. Bl. 3; *Brooks* v. *Commonwealth*, 41 Va. 845; *People* v. *Youngs*, 1 Caines, 37; *Freeman* v. *People*, 4 Den. 9; *People* v. *Schaller*, 224 App. Div. 3). The present inquiry, though a criminal proceeding rather than a civil one, is collateral or supplementary within the meaning of the ancient rule (*People* v. *Gowasky*, *supra*).

If the sections as to peremptory challenges are read with literal strictness, they do not touch this case. They have been placed in the part and title of the Code governing proceedings after indictment and before trial (Code Crim. Pro. § 2; Code Crim. Pro., part IV, tit. VI, ch. III, §§ 359, 370, 373). This position might not be controlling if an intention to extend the privilege to other criminal proceedings were otherwise revealed. It is significant, if not wholly decisive, where such evidence is lacking.

We are unable to discover in the statute an indication of a purpose to reverse the course of history, and clothe the defendant with a privilege so consistently denied.

The court did not err in its limitation of the right of challenge.

The judgment of the Appellate Division and that of the Court of General Sessions should be reversed and a new trial ordered.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.