600 P.2d 253

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Harry LINAM, Defendant-Appellant.**

**No. 11816.**

Supreme Court of New Mexico.

Jan. 11, 1979.

Rehearing Denied Feb. 12, 1979.

John B. Bigelow, Chief Public Defender, Joseph N. Riggs III, Asst. Public Defender, Mark Shapiro, Asst. Appellate Defender, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Lawrence A. Gamble, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

EASLEY, Justice.

After the defendant was convicted on two counts of forgery, the State filed a supplemental information charging him as an habitual offender. A jury found him to be the same person who was convicted of the forgeries and of three previous felonies. He was sentenced to life imprisonment and appeals.

Three issues are raised:

1. Whether the admission into evidence of photographic and fingerprint identification records from the State Penitentiary was in violation on the Hearsay Rule, N.M. R.Evid. 802, N.M.S.A. 1978 (Formerly § 20–4–802, N.M.S.A. 1953 (Supp. 1975)), and of the defendant's constitutional right to confront witnesses against him;

2. Whether the habitual offender statute should be construed to require proof that each felony was committed after conviction for the next preceding felony; and

3. Whether, under that statute, evidence indicating only the dates of the prior convictions, and not the dates the offenses were committed, is sufficient to enhance the sentence.

Certified copies of each judgment and sentence in the three prior convictions were admitted. The indictment, verdict, and judgment and sentence for the principal offenses were admitted. Photographs and

fingerprint I.D. cards from the State Penitentiary records were admitted to prove that the defendant was the same person involved in the three prior convictions.

The prosecutor who tried the principal case testified that the defendant was the same person who was convicted in that trial. The records supervisor at the penitentiary testified in the instant case that he personally took the photographs and fingerprints of the defendant when he was committed in 1973, and that the defendant was the same person then committed. He also testified that the photographs and fingerprints relating to the commitments in 1962 and 1968 were from the files at the penitentiary and that such records were regularly made and kept in the file whenever a person was committed, although he had no personal knowledge regarding the making of these particular records.

A fingerprint expert testified that he had taken the defendant's fingerprints on the day of this trial and that those fingerprints were made by the same person whose prints appear on the fingerprint I.D. cards from the 1962, 1968 and 1973 commitments.

### Admissibility of Penitentiary Identification Records

■ The public records exception to the hearsay rule allows admission of "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . . ." N.M.R.Evid. 803(8), N.M.S.A. 1978 (Formerly § 20–4–803(8) N.M.S.A. 1953 (Inter, Supp. 1976)). Defendant contends that penitentiary staff are 'law enforcement personnel'; therefore penitentiary identification records made by them are not admissible under that exception.

The cases cited in support of this proposition are distinguishable. Two of them dealt with whether a corrections employee was a law enforcement officer within the meaning of statutes relating to employee benefits. *Schalk v. Department of Admin., Pub. Emp. Retire. Sys.*, 42 Cal.App.3d 624, 117 Cal.Rptr. 92 (1974); *Kimball v. County of Santa Clara*, 24 Cal.App.3d 780, 101 Cal. Rptr. 353 (1972). The other case cited, *State v. Grant*, 102 N.J.Super. 164, 245 A.2d 528 (1968), held that a county penitentiary corrections officer whose duties were to supervise prisoners and to maintain security was a law enforcement officer within the meaning of the statute proscribing assault and battery upon a law enforcement officer.

In the present case, the records in question were made and kept by the records supervisor at the penitentiary. There is no indication that his duties as custodian of the records include law enforcement as the term is used in the *Grant* case.

Both the New Mexico and the Federal Rules of Evidence contain the identical provision. F.R.Evid. 803(8)(B). Congressional intent in adopting that rule will serve to indicate its purpose. Representative Dennis proposed the amendment which added the language, "excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel." His stated reason was:

> [I]n a criminal case, only, we should not be able to put in the police report to prove your case without calling the policeman. I think in a criminal case you ought to call the policeman on the beat and give the defendant the chance to cross-examine him, rather than just reading the report into evidence. That is the purpose of this amendment.

120 Cong.Rec. 2387 (1974).

Thus, the exclusion is aimed at reports of law enforcement personnel engaged in investigative and prosecutorial activities where the officer himself should testify. There is no reason to equate the job of record supervisor with the term "law enforcement personnel", as it is used in the rule, merely because the record supervisor is employed at the penitentiary.

It appears that the photographic and fingerprint identification records, properly authenticated by their custodian, were admissible under the Public Records Exception to the hearsay rule, *State v. Gallegos*, 91 N.M. 107, 570 P.2d 938 (Ct. App. 1977); and their admission did not violate the defendant's right to confront witnesses against him. *State v. Johnson*, 194 Wash. 438, 78 P.2d 561 (1938); *State v. Bolen*, 142 Wash. 653, 254 P. 445 (1927); and *Waxler v. State*, 67 Wyo. 396, 224 P.2d 514 (1950).

### Construction of the Habitual Offender Statute

■■ For a sentence to be enhanced under the Habitual Offender Statute, § 31–18–5, N.M.S.A. 1978 (Formerly § 40A–29–5. N.M.S.A. 1953 (2d Repl. 1972) ), there must have been a prior conviction preceding the commission of the offense for which the enhanced sentence is sought. *State v. Ellis*, 88 N.M. 90, 537 P.2d 698 (Ct. App. 1975). *See French v. Cox*, 74 N.M. 593, 396 P.2d 423 (1964) for a similar interpretation of the previous Habitual Offender Statute, § 41–16–1, N.M.S.A. 1953 (Repealed by Laws 1963, Ch. 303, § 30–1); and *State v. Garcia*, 91 N.M. 664, 579 P.2d 790 (1978) for a similar interpretation of § 31–18–4, N.M. S.A. 1978 (Formerly § 40A–29–3.1, N.M. S.A. 1953 (Supp. 1975) ) which provides for enhanced sentences for use of a firearm in the commission of a felony.

It is a question of first impression in this Court whether, in a proceeding to enhance sentence for a third or fourth felony, *each* felony must have been committed after conviction for the preceding felony. The overwhelming majority of jurisdictions have adopted such a construction as the logical and reasonable extension of the habitual offender laws. Annot. 24 A.L.R.2d 1247, §§ 6, 9 and 12. The historical reason is that the intent of such statutes is to provide an increased penalty in order to deter commission of a subsequent offense, and that an increase in penalty would not deter one who had not yet been convicted and punished for an earlier offense. It is the opportunity to reform under threat of more severe penalty which serves to deter. See *Joyner v. State*, 158 Fla. 806, 30 So.2d 304 (1947); *Karz v. State*, 279 So.2d 383 (Fla. App. 1973) and *Cobb v. Commonwealth*, 267 Ky. 176, 101 S.W.2d 418 (Ct. App. 1936).

A rather small minority of jurisdictions has adopted the view that the prior offenses, if based on unrelated charges, need not have been committed after conviction for a preceding offense. *People v. Braswell*, 103 Cal.App. 399, 284 P. 709 (1930); *State v. Williams*, 226 La. 862, 77 So.2d 515 (1955); *People v. Gorney*, 203 Misc. 512, 103 N.Y.S.2d 75 (1951); *Bumbaugh v. State*, 36 Ohio App. 375, 173 N.E. 267 (1930).

There is a New Mexico case that contains dictum indicating favor for the minority rule. *State v. Sanchez*, 87 N.M. 256, 531 P.2d 1229 (Ct. App. 1975). The Court of Appeals there held that the trial court did not err in instructing that, for enhancement of sentence, the jury may consider three previous convictions entered on the same day as one conviction, since the record did not indicate whether or not they were unrelated offenses. The court went on to state that "where multiple convictions are obtained for crimes unrelated to one another, no prohibition has been found to prevent counting each conviction separately in habitual offender proceedings. I.e., *Cox v. State*, 255 Ark. 204, 499 S.W.2d 630 (1973)." *Id.* at 258, 531 P.2d at 1231.

We now clarify New Mexico's stance on this issue by adopting the majority view. We hold it is inherent in the habitual criminal act that, after punishment is imposed for the commission of a crime, the increased penalty is held *in terrorem* over the criminal for the purpose of effecting his reformation and preventing further and subsequent offenses by him. Thus the use of the words "upon conviction of such second felony" or "third felony" as used in the statute must be held to mean felonies committed subsequent to the dates of the convictions relied on to effect an increase of the penalty. Otherwise the reform object of the legislation to provide a deterrent from future crimes would not be realized.

*Sequence of Convictions and Crimes*

■ The sole remaining issue is whether each of Linam's prior offenses except the first were shown to have been committed after a preceding conviction.

The evidence proves that the defendant was convicted on two counts on May 21, 1962 and sentenced to one to three years and one to ten years concurrently; convicted on April 17, 1968 and sentenced to one to five years; convicted on March 2, 1973 and sentenced to two to ten years; and convicted for a fourth time on two counts in September 1976. There is no direct proof that each of the offenses was committed subsequent to the date of the next preceding conviction relied on to effect an increase of the penalty in each instance.

The State argues that the periods between the dates of conviction are longer in each case than the sentence imposed and that it may be implied that commission occurred in each case, but for the first, after the conviction for the preceding crime. *Perry v. Mayo*, 72 So.2d 382 (Fla. 1954). This argument is not persuasive. It calls for speculation. There is a reasonable hypothesis that the real facts may not support the conclusion advanced. We hold that there is no substantial evidence to support the decision that Linam's convictions and commissions of the crimes involved conform to the necessary pattern as here announced.

We reverse. Because an habitual proceeding involves only sentencing, not trial of an "offense", and therefore jeopardy does not attach, *see Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.E. 1683 (1948); *Davis v. Bennett*, 400 F.2d 279 (8th Cir. 1968); and, *Pearson v. State*, 521 S.W.2d 225 (Tenn. 1975), we remand for a new trial.

IT IS SO ORDERED.

McMANUS, Senior Justice, and FEDERICI, J., concur.