Harry E. LINAM, Petitioner-Appellant,

v.

M. Jerry GRIFFIN, Warden, New Mexico State Penitentiary, and Attorney General of the State of New Mexico, Respondents-Appellees.

No. 80–1532.

United States Court of Appeals, Tenth Circuit.

Aug. 9, 1982.

**370**

Reber Boult, Asst. Federal Public Defender, Albuquerque, N. M. (Tova Indritz, Federal Public Defender and R. Raymond Twohig, Jr., Asst. Federal.Public Defender, Albuquerque, N. M., with him on the brief), for petitioner-appellant.

Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, N. M. (Jeff Bingaman, Atty. Gen., and Eddie Michael Gallegos, Asst. Atty. Gen., Santa Fe, N. M., with him on the brief), for respondent-appellee.

Before SETH and DOYLE, Circuit Judges, and ANDERSON,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

## INTRODUCTORY STATEMENT

Following his conviction of the charge of forgery in two counts the defendant-appellant Linam was sentenced to two consecutive two to ten year terms in the state penitentiary of the State of New Mexico. Subsequent to that the state filed a supplemental information charging Linam as an habitual criminal pursuant to the N.M.Stat. Ann. § 31–18–5 (1978), which provides that:

> Any person who, after having been convicted within the state of a felony or who has been convicted under the laws of any other state government or country, of a crime or crimes which if committed within this state would be a felony, commits any felony within this state not otherwise punishable by death or life imprisonment, shall be punished as follows:
>
> A. Upon conviction of such second felony, if the subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then such person must be sentenced to imprisonment for a term not less than half the longest term, nor more than twice the longest term prescribed upon a first conviction.
>
> B. Upon conviction of such third felony, if the subsequent felony is such that, upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then such person must be sentenced to imprisonment for a term not less than the longest term, nor more than three times the longest term prescribed upon a first conviction;
>
> C. Upon conviction of such fourth felony, then such person must be sentenced to imprisonment in the state penitentiary for the term of his natural life.

The habitual offender hearing was held after his conviction and sentence to the two consecutive two to ten year terms for forgery. The jury found him to be the same person who was convicted of three prior felonies along with the two counts of forgery. There is nothing in the record as to the nature of the prior convictions.

Under § 31–18–5C Linam was given a life sentence and the forgery sentences were vacated. However, Linam appealed the conviction to the New Mexico Supreme Court, *State v. Linam*, 93 N.M. 307, 600 P.2d 253 (1979). His position there was that the state had the burden of proving that he had committed each felony *after* conviction for the preceding felony. At the habitual offender hearing, the state introduced photographs and fingerprint cards from the state penitentiary as to each of the three prior felonies, as well as certified copies of each judgment and sentence from 1962, 1968 and 1973. The prosecutor who tried Linam on the forgery counts testified that Linam was the same person who was convicted on those counts. The testimony of the records supervisor of the prison was that the photographic records from the prior convictions were those of the Harry Linam then being charged as an habitual of-

---

* Honorable Aldon J. Anderson, Chief Judge, District of Utah, sitting by designation.

fender. Finally, the fingerprint expert stated that the prints he took at this hearing were those of the man convicted who was sentenced for the three prior felonies, by comparison to the prints in the past convictions. The state did not present evidence of the dates of commission of the prior felonies.

On the appeal referred to immediately above in the New Mexico Supreme Court it appeared that the question whether it must be proved that each felony was committed after conviction for the preceding felony was a question of first impression. Based on this the court reversed and remanded to the trial court for a second habitual offender hearing based on this new interpretation of the habitual offender statute. The Supreme Court found that no double jeopardy existed and as a result remanded the case for a second proceeding and based this on the fact that the habitual criminal adjudication did not constitute guilt of an offense. 600 P.2d at 256. Linam petitioned for rehearing on the efficacy of the remand citing the double jeopardy prohibition articulated in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Final judgment was entered and Linam's petitions for rehearing and subsequently for certiorari to the United States Supreme Court were filed. Both petitions were denied. *Linam v. New Mexico*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979).

After that, based on his belief that the Constitution had been violated, Linam filed the present petition for habeas corpus in the Federal District Court for New Mexico claiming that the state supreme court's remand had placed him twice in jeopardy in violation of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

After the filing of the habeas petition Linam was adjudged an habitual offender at the second proceeding and was given a life term. The federal district court dismissed the habeas petition stating that the double jeopardy contention lacked merit. The present appeal followed.

## THE ISSUE

The issue to be determined is whether the double jeopardy clause of the fifth amendment bars a remand following appeal directed at obtaining evidence as to the dates of the prior commission of crimes in order to satisfy the interpretation of the New Mexico habitual criminal statute that there be proof that each felony was committed *after* conviction for the preceding felony.

The New Mexico habitual criminal statute § 31–18–7, now cited as 31–18–20, sets forth the procedural requirements to be followed where the defendant who is accused of a felony is charged under the Habitual Criminal Act. The custom in New Mexico is to proceed on a bifurcated basis. Following the conviction of a felony offense, where the defendant has at least one prior conviction of a felony, the district attorney must file a supplemental information and hold a jury hearing on the issue of commission by the defendant of the prior offenses. The habitual offender hearing may be held immediately after the trial on the substantive or "triggering" offense or it may be held in front of a new jury even some months after the substantive conviction. *See e.g., State v. Garcia*, 95 N.M. 246, 620 P.2d 1271 (1980); *State v. Valenzuela*, 94 N.M. 340, 610 P.2d 744 (1980).

Section 31–18–7 which sets forth the proceedings in habitual criminal cases provides for a second hearing following convictions on the issue of proof of prior offenses. In essence, it says:

> The court in which a person has been convicted of a felony and charged as an habitual offender under the provisions of Sections 29–5 and 6 shall cause such defendant, whether confined in prison or otherwise, to be brought before it, and the court then informs him of the allegations contained in the information and of his right to have a trial as to the truth of the contention that he is the man named in the prior convictions and he is then asked whether he is the same person who is charged in the information. If he de-

nies it or refuses to answer or remains silent, his plea or the fact of his silence are entered of record and a jury is empaneled to inquire if the offender is the same person mentioned in the several records. If the jury finds that the defendant is the same person and that he has in fact been convicted of such previous crimes as charged, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, and that he has in fact been convicted of such crimes as charged, in that event the court shall sentence him to the punishment as prescribed in Section 29–5 [31–18–5 NMSA 1978] and thereupon the court deduct from the new sentence all time actually served on the next preceding sentence and the remainder of the two sentences shall run concurrent.

The hearing has to comply with the speedy trial requirement, that is, it must have been held within six months of the supplemental information. *State v. Lopez*, 89 N.M. 82, 547 P.2d 565 (1976). The jury must decide whether the defendant is the same person from the evidence presented. They are then presented with evidence as to the prior felonies and evidence that the accused on trial committed the prior offenses. The enhanced sentence follows without mitigation, save for the time already served.

New Mexico's position is that the Habitual Criminal Act does not create a new offense, that it merely increases the sentence. *State v. Nelson*, 96 N.M. 654, 634 P.2d 676 (1981); *State v. James*, 94 N.M. 604, 614 P.2d 16 (1980). But many of the protections which are given to a defendant at trial are extended at this hearing. He has a right to counsel and, in addition, he is entitled to be present in accordance with state Rule 47(a), allowing the defendant to be present at every stage of the trial. This includes the voir dire of the jury picked for the habitual criminal hearing. *State v. Garcia*, 95 N.M. 246, 620 P.2d 1271 (1980). The New Mexico law calls for the application of criminal trial procedures insofar as possible. *State v. Silva*, 78 N.M. 286, 430 P.2d 783, 785 (Ct.App.1967).

There are no guides in New Mexico law on the quantum of evidence required for a jury finding that proves the validity of the past convictions and the identity of the accused. The majority rule appears to require that proof under the habitual offender statute be established beyond a reasonable doubt. *See, e.g., People v. Casey*, 399 Ill. 374, 77 N.E.2d 812 (1948); *State v. Post*, 251 Iowa 345, 99 N.W.2d 314 (1959); *People v. Reese*, 258 N.Y. 89, 179 N.E. 305 (1932). This, however, is not a problem here because the defendant has been shown to be the identical person who was previously convicted and that is all that is needed. The habitual criminal offender under the Act, is not required to have a preliminary hearing.

The narrow issue here concerns whether double jeopardy arises from the remand to ascertain the time of the prior offenses. If the procedure which was followed in New Mexico is at odds with the fifth amendment's double jeopardy prohibition, the writ of habeas corpus would issue. We hold that it is not.

## THE BURKS ARGUMENT

Appellant here relies on the language of the New Mexico Supreme Court that the government failed to prove that the defendant was an habitual criminal because there was a lack of substantial evidence. *State v. Linam*, 93 N.M. 307, 600 P.2d 253, 256. The argument of Linam is that double jeopardy attaches at a habitual offender hearing and that *Burks v. United States, supra*, holds that one cannot be retried when an appellate court determines that there was insufficient evidence to convict. We conclude that this case does not fall within the boundaries set by this case, even were one to assume that double jeopardy attaches in such a proceeding. Frequently it has been held that no prohibition exists against retrying a defendant who overturns his convictions. *E.g., North Carolina v. Pearce*, 395 U.S. 711, 719–20, 89 S.Ct. 2072, 2077–78, 23 L.Ed.2d 656 (1969); *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12

L.Ed.2d 448 (1964); *United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). One recent exception to this statement is the ruling of the Supreme Court in *Burks, supra*. *Burks* stands for the proposition that where a conviction is reversed for insufficient evidence the defendant cannot be retried, unlike the treatment of a reversal for trial error. *Burks* argued in the circuit court that his insanity defense following a robbery of a bank with a dangerous weapon should have caused his acquittal because the government failed to prove sanity beyond a reasonable doubt. The appellate court accepted Burks' position but remanded for a new trial. The Court held that Burks could not be retried because the failure to comply with the established rule on proving sanity beyond a reasonable doubt once a prima facie case of insanity is made out acted as an implicit acquittal, i.e., if the trial court had properly applied the established rule Burks would have been acquitted. *United States v. Ball* was distinguished as involving trial error, namely the failure to dismiss a faulty indictment.

██ A reversal for trial error does not constitute a decision that the government has failed to prove its case; therefore one can be retried if a conviction is reversed on such a ground. The Court in *Burks* gave examples of trial court error; incorrect receipt of evidence, incorrect rejection of evidence, incorrect instruction and prosecutorial misconduct. *United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896), was merely distinguished and not reversed by the *Burks* court because "[it] would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States v. Tateo*, 377 U.S. at 466, 84 S.Ct. at 1589.

The ruling in *Burks* was that the prosecution had failed to comply with the rule then established that the burden was on the government to prove sanity, a rule set down in *United States v. Smith*, 437 F.2d 538 (6th Cir. 1970).

In *Linam* the court held as a matter of first impression that New Mexico was obligated to prove in an habitual offender hearing that the commission of every felony occurred after the preceding felony conviction. How does this decision differ from that in *Burks*? It differs because it is merely a formal matter, not a substantive one such as was present in *Burks*. The rationale is that habitual offender sentences deter commission of subsequent offenses and there is no deterrence when one has never yet been convicted and punished for an earlier offense. The majority view in other states has been that the commission dates as well as the conviction dates have to be introduced in order to show the sequence.[1] There is no problem of whether to produce evidence. The evidence is a matter of record. It waits to be presented properly so that the order of the convictions can become part of the record. It appears that this has never previously been the rule in New Mexico, whereas other states have held to it although there has been a minority view that prior offenses need not be shown to have been committed after conviction for the preceding offense, which admittedly is not a very good rule.

So, the New Mexico decision in *Linam* is not one in which the defendant would have been acquitted because the standard was then unknown. It was a new development. Appellant admitted as much as petitioner in certiorari, that prior to *Linam* New Mexico courts had not required proof that the commission of prior felonies occurred after the immediately preceding conviction.

The conclusion to be drawn is that the New Mexico Court of Appeals' interpretation of § 31–8–5 meets the *Burks* Court's definition of trial error and is not a true finding of inadequacy of evidence. The *Linam* decision cannot be interpreted as saying that the prosecution put on all the evidence it had and came up short, or that

1. E.g., *Cowan v. State*, 172 Tex.Cr.R. 183, 355 S.W.2d 521 (1962); *Dye v. Skeen*, 135 W.Va. 90, 62 S.E.2d 681 (1950); *Joyner v. State*, 158 Fla. 806, 30 So.2d 304 (1947).

there was a negligent failure to carry the burden of proof. Instead it is closer to a reversal and retrial where the trial court has incorrectly excluded evidence, than it is to a finding that the state had its "one bite from the apple" and it failed to meet the burden of proof.

■ Thus, double jeopardy does not bar retrial when evidence is incorrectly excluded, 437 U.S. at 15–16, 98 S.Ct. at 2149. It cannot be said that the prosecution is deprived of its opportunity to present its evidence. The *Linam* holding was applied retroactively to *Linam* but the procedure adopted in New Mexico was that the *Linam* case is to be applied prospectively, *State v. Valenzuela*, 94 N.M. 340, 610 P.2d 744 (1980). This demonstrates that the decision in *Linam* was not the result of the state's negligently failing to muster its proof. Rather the holding was that the state must henceforth prove the sequence of the commission of convictions.

### THE DiFRANCESCO DECISION AS AN ALTERNATIVE BASIS FOR DECISION

In *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the issue was whether the government could appeal under 18 U.S.C. § 3576 a judicial increase of a sentence following the court's finding that the convicted defendant was a "dangerous special offender" pursuant to 18 U.S.C. § 3575. Justice Blackmun in the majority opinion wrote that the government's appeal of the trial judge's sentence under § 3575 was not barred by the double jeopardy clause. The opinion stated that historically sentencing *per se* had not carried the same finality as the judgment of guilt or innocence on the merits. It is the judgment on the merits that triggers the fifth amendment's double jeopardy protection. 101 S.Ct. at 435. The Supreme Court discussed the same issue which now confronts this court and gave a conclusion which we regard as a proper one. This is as follows:

[O]ur task is to determine whether a criminal sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. We conclude that neither the history of sentencing practices, nor the pertinent rules of this Court, nor even consideration of double jeopardy policy support such an equation. 101 S.Ct. at 435.

The context in which the double jeopardy issue arose in the *DiFrancesco* case required a bench hearing on the enhanced sentence pursuant to the "dangerous special offender" statute. The judge determines if the defendant is a dangerous offender by *a preponderance of the evidence* based on trial evidence, the presentence report and added evidence bearing on the sentencing. This is not considered to be an ingredient of the judgment on the merits—one capable of barring a further hearing on the subject.

In the Habitual Criminal Act of New Mexico there is no consideration of intrinsic merits. The Federal Special Offender Act, judged by the proceedings in *DiFrancesco*, could be said to have some resemblance to a trial. The Court has latitude in sentencing the special offender. The maximum term is 25 years. On the other hand the New Mexico procedure requires jury sentencing and under § 31–18–5C if the jury finds the defendant to be an habitual offender with four felonies, he automatically receives a life sentence. We stress the distinctions only because they show that the New Mexico procedure tends to be a formality which bears little resemblance to a trial.

The most recent sentencing case before the Supreme Court was *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). Involved there was the application of double jeopardy to the Missouri capital sentencing procedure. In that instance the defendant had been convicted of murder. Following that, in a bifurcated sentencing proceeding, the jury determined that Bullington should be sentenced to life imprisonment without parole. Under the statute the jury must make this determination and must select between the death penalty and life imprisonment. Defendant's motion for a new trial was granted

because of Sixth Amendment violations in the jury selection process. Upon retrial the state again sought the death penalty. On appeal it was argued on behalf of Bullington that the jury's first sentence of life imprisonment prohibited a death penalty sentence; that it barred the state from again seeking the death penalty. In effect, then, the verdict constituted an acquittal as to the death penalty. The Supreme Court agreed with this result. In effect it applied *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) to sentencing. *Green* held that once convicted of a lesser included offense a defendant who obtains a new trial is not to be tried on the greater charge.

The Supreme Court, speaking through Justice Blackmun, ruled that the sentencing hearing in *Bullington* resembled a trial; a trial upon the issue of punishment. *Id.* 101 S.Ct. at 1858. The Supreme Court did not, however, hold that there could not be a further trial. It ruled out death as a penalty.

This concept of an acquittal of a potential death penalty is inapplicable to the habitual criminal proceedings, for in the latter situation there exists no basis for a jury verdict of "acquittal". The habitual criminal status is not a conviction of a distinct crime. Indeed, a conviction on the merits has occurred and the crime convicted of is unrelated to the Habitual Criminal Act which produces not a judgment of guilt of the offense, but rather an enhanced sentence. *See Davis v. Bennett*, 400 F.2d 279, 282–83 (8th Cir. 1968), *cert. denied*, 395 U.S. 980, 89 S.Ct. 2137, 23 L.Ed.2d 768 (1969).

The Supreme Court's treatment in *Bullington* of the *DiFrancesco* decision is pertinent. The review provided under 18 U.S.C. § 3575–76 differs greatly from that which was applicable to the Missouri statute. The review described under § 3576 does not include a second opportunity to convince another factfinder as was the case in *Bullington*. The sentencing under § 3575 is much closer to the general proceeding in which a full-blown sentencing hearing is held than to the bifurcated Missouri procedure re-

quirement. Also the burden of proof differs in the two proceedings. Section 3575 allows the federal judge to determine the dangerous special offender status by the civil preponderance standard.

The proceedings in *Bullington* included a consideration by the jury of the facts bearing on guilt or innocence. This aspect serves to differentiate a case like the present one in which the increased sentence has nothing to do with the basic cause being tried. Thus there is a qualitative and quantitative difference. The death penalty is a part of the offense of murder. This uniqueness of the death penalty unquestionably serves to distinguish *DiFrancesco* from *Bullington*. Cf. *Lockett v. Ohio*, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (because of the qualitative difference between the death penalty and other penalties the due process concerns are more strictly scrutinized). We hold that the *DiFrancesco* case is more applicable to the New Mexico habitual offender proceeding with which we are faced than is *Bullington*. *See* 101 S.Ct. at 1859, n. 15.

Mr. Justice Powell's dissent in *Bullington* brought out the fact that it marked the first time that the double jeopardy principle had been applied to sentencing; in the past the Court had considered a qualitative difference to exist between a trial on the issue of guilt or innocence and sentencing. *E.g.*, *DiFrancesco, North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919); 101 S.Ct. at 1863.

Inasmuch as *Bullington* has departed from the Court's prior view of sentencing and was decided very soon after *DiFrancesco*, it is logical to conclude that it was the fact that punishment was part and parcel of the role the jury played which accounted for the different results. It would have been difficult, if not impossible, to treat the *Bullington* judgment as if it were a bifurcated procedure. In truth, the elements of the merits and the sentencing were wedded. We need not go beyond the comparisons which are made above. The conclusion is

clear that this case should be governed by *DiFrancesco* rather than *Bullington*.

### CONCLUSION

In summary, then, we conclude that the jeopardy problem is not present in the instant case, whether the *DiFrancesco* approach or that in *Burks* is followed. It is not true that the government had its chance and failed to prove the case properly. Instead the situation is that the New Mexico court remanded this on a prospective basis and with a complete belief that the deficiency could be remedied. Considering the fact that this can in no way be considered a guilt or innocence adjudication, it is almost like sending it back to mend the record. Moreover and alternatively, the habitual criminal proceeding in New Mexico, and other places as well, involves, first of all, the trial on the charge that is set forth in the information but only if there is a conviction, the subsequent proceedings take place. That is, a supplement to the indictment is filed which alleges the previous convictions; then comes the hearing to ascertain whether the sentence is subject to being enhanced. And the proceeding that follows is an inquiry as to whether or not the man standing before the court is the same person who was previously convicted as charged. The jury answers yes or no in accordance with the evidence. This is not the kind of adjudication that is referred to in the fifth amendment.

For all of these reasons, the judgment of the district court should be and the same is hereby affirmed.

ALDON J. ANDERSON, District Judge, concurring:

As I read the Court's opinion, two alternative reasons are given to support affirmance of the district court. First, the Court assumes that double jeopardy is theoretically applicable to the New Mexico habitual criminal proceeding, and holds that it nonetheless does not operate to bar the resentencing here because the prosecution's omission at the first sentencing hearing was more akin to "trial error" than a failure to produce sufficient evidence, as those concepts are distinguished in *Burks v. United States*, 437 U.S. 1, 15–16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978). Second, the Court rejects outright the proposition that double jeopardy has application to the New Mexico proceeding.

I agree with the Court, for reasons stated hereafter, that the prosecution's failure at the first sentencing hearing to produce evidence of the sequence of defendant's prior convictions should not bar it from retrying the defendant. Therefore I concur in the result reached by the Court. I respectfully differ with the Court's view expressed in the second part of its opinion, however, that double jeopardy is inapplicable to this type of sentencing proceeding because in my view this case is controlled by the Supreme Court's recent holding in *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), not *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), as stated by the majority. Consequently I am unable to join in this portion of the majority's opinion.

I appreciate the impetus for the majority's desire to distinguish the habitual criminal proceeding at issue here from the bifurcated sentencing proceeding before the Supreme Court in *Bullington*. As the majority notes, until *Bullington*, double jeopardy protection had not been applied to sentencing. *See United States v. DiFrancesco*, 449 U.S. 117, 132–38, 101 S.Ct. 426, 434–38, 66 L.Ed.2d 328 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 719–21, 89 S.Ct. 2072, 2077–78, 23 L.Ed.2d 656 (1969). By applying double jeopardy to the sentencing procedure in *Bullington* the Supreme Court breaks new ground, creating the risk that in the future double jeopardy may be applied in other sentencing contexts to give sentences a finality that, for good reasons, the law has not previously accorded them.

The majority opinion suggests at least three reasons why the *Bullington* holding should not be extended to the facts of this case. First, the majority states that an habitual offender sentencing, where the jury must resolve only the issue of the

defendant's identity, is more of a "formality" in terms of the proof required than a death sentence proceeding, where the jury must make a subjective determination whether the requisite aggravating circumstances are present. Second, the majority argues that the Supreme Court was undoubtedly concerned with the *severity* of the death sentence, which is different in kind than any other sentence. Thus, an "acquittal" of the death sentence should prevent a later sentence that might result in the death penalty. This concern is not present here, and in the majority's view serves to take this case out of the *Bullington* rule. Finally it is said that in the bifurcated proceeding in *Bullington* the same proof that is offered on the issue of guilt or innocence is also relevant on the issue of punishment, so that the two are "wedded" for double jeopardy purposes. This is unlike the proceeding here, where the evidence of defendant's guilt adduced at the trial triggering the holding of the habitual criminal proceeding is irrelevant to the narrow issue presented at that proceeding—whether the convicted defendant is the same individual that committed previous crimes.

The analysis made indicates certain factual differences between this case and *Bullington* which, in the majority view, limit the reach of *Bullington* and require that its rule not be extended to this case. However, these distinguishing factors, of necessity *critical* to the majority's conclusion, are not relied on *nor even articulated* by the Supreme Court as a basis for its holding. Reliance on them to distinguish *Bullington* would therefore seem to be misplaced.

The Supreme Court in *Bullington* makes it clear that the critical feature of the Missouri sentencing procedure impelling the extension of double jeopardy protection to it is that it has all the earmarks of a trial at which the government must prove its case. The Supreme Court states the basis for its holding as follows:

> The procedure that resulted in the imposition of the sentence of life imprisonment upon petitioner Bullington at his

first trial, however, differs significantly from those employed in any of the Court's cases where the Double Jeopardy Clause has been held inapplicable to sentencing. The jury in this case was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was presented both a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of two alternative verdicts. *The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes.*

451 U.S. at 438, 101 S.Ct. at 1858 (Emphasis added). The Court further states its rationale: "Missouri *explicitly requires* the jury to determine whether the prosecution has 'proved its case.'" *Id.* at 444, 101 S.Ct. at 1861 (Emphasis in original). Thus, the Supreme Court's rationale is that where a sentencing proceeding is like a trial on the merits, at which the prosecution must present evidence of specific issues and a factfinder must then determine whether the prosecution has met its burden, double jeopardy bars a second try if the prosecution fails.

All these requirements are present in the New Mexico habitual criminal proceeding. It is conducted, as the majority notes in its opinion, just like a trial. The defendant is entitled to counsel, to be present, and to have the issues tried to a jury. The prosecution has a specific burden to meet, and the jury must determine whether this burden has in fact been met. The proceeding is indeed a "trial on the issue of punishment."

True, the issues to be tried may be characterized as more "formal" and the penalty

that may be imposed is not as severe as in *Bullington*. Also, the key issue here, the defendant's identity, is not "wedded" to the issue of defendant's guilt that was resolved at the preceding trial on the merits. Nevertheless, the rationale expressed in *Bullington*—that the trial-type nature of the proceeding there requires the application of double jeopardy—is broad enough that its logic should extend to the sentencing procedure at issue here.

The majority, as authority for its contrary conclusion, relies principally on the Supreme Court's decision in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). In *DiFrancesco*, the Supreme Court considered a double jeopardy challenge to the "dangerous special offender" provision of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 3575 and 3576. This statute, which permits the Government to appeal to the United States Court of Appeals the sentence imposed by the District Court on one adjudged a "dangerous special offender," was held not to violate double jeopardy.

*Bullington* was decided less than half a year after *DiFrancesco*. The Supreme Court's discussion in *Bullington* of *DiFrancesco* plainly indicates that the case before this Court falls within the *Bullington*, not the *DiFrancesco*, rule, as stated by the majority. The Supreme Court sets out three primary factors that distinguish the two cases:

> [T]here are highly pertinent differences between the Missouri procedures controlling the present case and those found constitutional in *DiFrancesco*. The federal procedures at issue in *DiFrancesco* include appellate review of a sentence "on the record of the sentencing court," § 3576, not a *de novo* proceeding that gives the Government the opportunity to convince a second factfinder of its view of the facts. Moreover, the choice presented to the federal judge under § 3575 is far broader than that faced by the state jury at the present petitioner's trial. Bullington's Missouri jury was given—and under the State's statutes could be given—only two choices, death or life imprisonment. On the other hand, if the Federal Government proves that a person convicted of a felony is a dangerous special offender, the judge may sentence that person to "an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise · authorized by law for such felony." § 3575(b). Finally, although the statute requires the Government to prove the additional fact that the defendant is a "dangerous special offender," it need do so only by a preponderance of the evidence. *Ibid.* This stands in contrast to the reasonable-doubt standard of the Missouri statute, the same standard required to be used at the trial on the issue of guilt or innocence.

451 U.S. at 440–41, 101 S.Ct. at 1859.

Applying the above analysis to this case, all the factors referred to by the Supreme Court to distinguish *Bullington* from *DiFrancesco* indicate that we should follow *Bullington*. In this case, to permit the State of New Mexico to reprosecute the defendant affords it "the opportunity to convince a second factfinder of its view of the facts," *id.*, just as in *Bullington*. The Supreme Court indicates that this is significantly different than the "appellate review of a sentence," *id.*, that was at issue in *DiFrancesco*. Furthermore, in this case, as in *Bullington*, the jury decides only the narrow issue presented to it. Under the New Mexico procedure, the jury is called on to decide whether the prosecution has met its burden, and accordingly determines whether the defendant has been proved an habitual offender. The jury does not have the wide sentencing discretion of a district judge under 18 U.S.C. § 3575 that the Supreme Court stated was critical in *DiFrancesco*. Finally, though there is apparently some doubt on this question, "(t)he majority rule," as the majority notes, "appears to require that proof under the habitual offender statute be established beyond a reasonable doubt." Majority opinion at 372. This is the same burden that must be met in *Bullington*'s bifurcated sentencing proceeding, and significantly, the Supreme Court

found, a greater burden than the preponderance of the evidence standard the United States must meet to prove "dangerous special offender" status under the statute that was at issue in *DiFrancesco*. In short, all of the critical factors that, according to the Supreme Court, serve to distinguish *DiFrancesco* from *Bullington* dictate compellingly that the *Bullington* rule controls the case at bar. This view has recently been adopted by the Fifth Circuit in a case on all fours with this one. *Bullard v. Estelle*, 665 F.2d 1347 (5th Cir. 1982).

Nonetheless, the result reached by the majority is acceptable because under *Burks* the retrial of criminal charges is barred only where the prosecution has had "one fair opportunity to offer whatever proof it could assemble." 437 U.S. at 16, 98 S.Ct. at 2150. Here the prosecution did not have a fair opportunity to put on its evidence, because until the New Mexico Supreme Court issued its opinion remanding defendant's case the prosecution simply did not know that proof of the commission and conviction of each offense before the commission and conviction of the next would be required. Certainly this failure of proof should not bar a retrial, under *Burks*. Indeed, it might be fair to state as a general principle that whenever a conviction is reversed solely for failure to produce evidence that was not theretofore generally understood to be essential to prove the crime, that double jeopardy does not bar reprosecution. Because this rationale is stated as an alternative basis for the Court's decision, I concur in this portion of it, and the ultimate decision reached.